IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WHITNEY NATIONAL BANK )
)
     Plaintiff )
)
vs. )    Case No. 2:07-CV-414-MEF
)
SAFETY GUIDE OF ALABAMA LLC )
and THOMAS J. MILLS )
)
     Defendants )

### BRIEF AND RESPONSE OF WHITNEY NATIONAL BANK TO THE MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO STAY FIRST AMENDED COMPLAINT

Plaintiff Whitney National Bank ("Whitney Bank") responds as follows to the Motion to Dismiss or in the Alternative, Motion to Stay First Amended Complaint (the "Motion to Dismiss") filed by Defendant Thomas J. Mills ("Mills"). In sum, Mills' arguments are wholly inappropriate for the motion to dismiss stage and are also without merit. Further, longstanding law prevents the application of the automatic stay to nonparties except in rare circumstances – none of which are present here – and Mills provides no legal support for such a stay.

### SUMMARY OF THE ARGUMENT

This is a lawsuit for damages resulting from a check in the amount of $150,000 (the "Check") issued on the checking account of Safety Guide of Alabama, LLC ("Safety Guide"), honored by Whitney Bank, and later dishonored by Safety Guide's bank. Under Alabama law, Mills is liable for the Check if he (i) made, uttered, delivered or indorsed the Check, and/or if he (ii) committed fraud and/or suppression by assuring Whitney Bank that the Check would be honored.

Mills asserts in his brief that he is not liable for the Check because (i) Highway Solutions LLC ("Highway Solutions")[1] and/or Safety Guide ratified the tortious acts of Mills, (ii) Whitney bank is judicially and/or equitably estopped from asserting its claims against Mills, and (iii) Whitney Bank's fraud claims are not pleaded with adequate specificity and are barred by the statute of frauds. These arguments lack merit and the Motion to Dismiss should therefore be denied.

Mills is liable to Whitney Bank for his tortious acts, regardless of whether those acts were ratified by others. Ratification of torts committed by Mills would merely establish joint liability between Mills and the ratifying entity, rather than discharge Mills of liability. Further, even if joint liability exists between Mills and Safety Guide and/or Highway Solutions, it is well settled law that the automatic stay applicable to those bankrupt parties does not apply to Mills.

Whitney Bank is not judicially or equitably estopped from asserting its claims against Mills. No inconsistent positions have been taken by Whitney Bank that warrant judicial estoppel. On May 11, 2007, Whitney Bank sued Mills, Safety Guide, Anne and Michael Marcato (together, the "Marcatos") and Highway Solutions. Although the damages claimed against the other defendants include the amount of the Check, the fact that multiple parties are liable to Whitney Bank for the Check is no basis for judicial estoppel. In addition, Mills accuses Whitney Bank of "picking and choosing" its defendants based on bankruptcy filings, despite the fact that Whitney Bank sued all of its defendants prior to the bankruptcy filings of Safety Guide, the Marcatos and Highway Solutions.

---

[1] As explained in the Statement of Facts section below, Highway Solutions is an entity closely related to and under common management with Safety Guide.

Finally, Whitney Bank pleaded its fraud claim against Mills in the Amended Complaint (as defined below) with adequate specificity to avoid dismissal. The fraud claim against Mills is not based on any contractual obligation and the Statute of Frauds does not apply.

Based on the forgoing and as more particularly explained below, the Motion to Dismiss is due to be denied.

## BRIEF STATEMENT OF THE FACTS

1.  Highway Solutions is an entity closely related to and under common management with defendant Safety Guide. (Complaint at ¶ 6.)

2.  On March 12, 2007, an officer or employee entrusted with Safety Guide's checks issued the Check in the amount of $150,000, payable to Highway Solutions. (Complaint at ¶ 8.)

3.  The Check was deposited into Highway Solutions' deposit account with Whitney Bank (the "Deposit Account") and subsequently honored by Whitney Bank. (Complaint at ¶ 8.)

4.  After the Check was deposited, Whitney Bank honored checks and other debits presented to the Deposit Account. (Complaint at ¶ 10.)

5.  The Check was subsequently dishonored by Safety Guide's bank. (Complaint at ¶ 11.)

6.  As a result of the checks and other debits that were posted to the Deposit Account and paid by Whitney Bank after the Check's deposit, the subsequent dishonor of the Check caused the Deposit Account to be overdrawn in an amount exceeding $150,000. (Complaint at ¶ 10, 11.)

7.  On May 11, 2007, Whitney Bank filed its complaint, commencing the instant lawsuit against Safety Guide and Mills (the "Complaint") seeking, without limitation, damages caused as a result of the Check that was deposited with Whitney Bank and later dishonored by Safety Guide's bank. (Docket No. 1.)

8.     Also on May 11, 2007, Whitney Bank filed its complaint against Highway Solutions and the Marcatos in the United States District Court for the Middle District of Alabama, Northern Division, seeking, without limitation, damages caused as a result of the overdrawn Deposit Account, Highway Solutions' breach of multiple promissory notes it executed in favor of Whitney Bank, and amounts owed to Whitney Bank by the Marcatos pursuant to commercial guaranties executed by the Marcatos. *Whitney Nat'l Bank v. Highway Solutions, et al* (Case No. 2:07-cv-00415-ID-TFM) Docket No. 1.

9.     On June 10, 2007, the Marcatos filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama. *In re Marcato* (Case No. 07-30824-WRS) Docket No. 1.

10.     On July 12, 2007, Safety Guide filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama. *In re Safety Guide of Alabama, LLC* (Case No. 07-30976-WRS) Docket No. 1.

11.     On September 26, 2007, Highway Solutions filed for bankruptcy in the United States District Court for the Middle District of Alabama. *In re Highway Solutions, LLC* (Case No. 07-31461-WRS) Docket No. 1.

12.     On October 30, 2007, Whitney Bank filed its amended complaint in the instant lawsuit (the "Amended Complaint"). (Docket No. 31.)

13.     On November 11, 2007, Mills filed the Motion to Dismiss. (Docket No. 34.)

14.     On December 17, 2007, Mills field his Brief in Support of the Motion to Dismiss (the "Brief"). (Docket No. 37.)

## STANDARD OF REVIEW

The Eleventh Circuit Court of Appeals has articulated the test for district courts to follow when ruling on a 12(b)(6) Motion to Dismiss. *McReynolds v. Ala. Dep't of Youth Servs.*, 204 Fed. Appx. 819, 821 (11th Cir. 2006). In *McReynolds*, the court stated:

> When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs. . . .[2] Such a motion should be granted only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitled them to relief."

*Id.*

When considering the instant Motion to Dismiss, all facts set forth in the Complaint and Amended Complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). "A complaint must not be dismissed unless it is shown that plaintiff can prove no set of facts in support of this claim, which would entitle him to relief. Thus the movant sustains a very high burden." *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).[3]

Whitney Bank's Amended Complaint meets the notice pleading requirements of Federal Rule of Civil Procedure 8. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006) (noting that "Federal Rule of Civil Procedure 8(a)(2) provides that a complaint

---

[2]The Supreme Court of the United States has likewise noted that "[i]n reviewing the sufficiency of a complaint in the context of a motion to dismiss we, of course, treat all of the well-pleaded allegations of the complaint as true." *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977).

[3] Mills makes a number of factual assertions in his Brief that are, at best, issues for summary judgment not motion to dismiss – and for which he cites no factual basis. For instance (and these are only examples), he states that "But for the allegation that Mills forged one of the Marcatos' signatures, the transaction was wholly within the line and scope of what Mills would ordinarily do...." (Brief at ¶ 23); "It is undisputed that Highway Solutions utilized the entirety of that deposit for its own benefit" (Brief at ¶ 40). Mills also notes that there is no assertion (at present) that he had personal benefit (Brief at ¶ 30) – because there has been no discovery – and because such an assertion is not necessary to the causes of action pled.

must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"). The Amended Complaint clearly articulates claims against Mills based on sections 6-5-285 and 7-3-415 of the Alabama Code, fraud and/or suppression. As the Eleventh Circuit Court of Appeals stated in *McReynolds*, "we do not seek to determine whether the plaintiff will prevail on his claims, 'but whether the allegations are sufficient to allow them to conduct discovery in attempt to prove their allegations.'" *McReynolds*, 204 Fed. Appx. at 821 (quoting *Jackam*, 800 F.2d at 1579).

Taking the allegations in the Amended Complaint as true, the Motion to Dismiss is due to be denied, and Whitney Bank should have the opportunity to prove its allegations.

## LEGAL ARGUMENT

**I.    Mills is Liable under Alabama Law to Whitney Bank for His Tortious Conduct, Even if His Conduct was Ratified by Safety Guide and/or Highway Solutions.**

Mills contends that Safety Guide and/or Highway Solutions ratified or authorized his tortious conduct. However, Mills remains liable to Whitney Bank, regardless of whether his tortious actions were authorized or ratified. Ratification may establish joint liability between Mills and the ratifying party, but it would not discharge Mills' liability. If joint liability does exists between Mills and Safety Guide and/or Highway Solutions, it is well settled law that the automatic stay applicable to those bankrupt parties does not apply to Mills.

First, neither the Motion to Dismiss nor the Brief offer any evidence that Safety Guide or Highway Solutions ratified the actions of Mills. Nor, does the complaint offer any basis to conclude that Safety Guide or Highway Solutions ratified the actions of Mills. Mills just asserts it – this would not meet the summary judgment standard – much less the motion to dismiss standard.

The only basis of Mills' ratification argument is his assertion, that "by virtue of the fact that neither Safety Guide nor Highway Solutions has made any claim whatsoever within their respective bankruptcy petitions pertaining to this transaction, it has been, *as a matter of law,* ratified by either or both of them." (Brief at ¶ 31) (emphasis added). Mills cites no cases where the failure to file a lawsuit against an employee is evidence of ratification – particularly without showing full knowledge by the principal and particularly at the pleading stage.[4]

Further, Highway Solutions has asserted that the Check was forged and therefore has not ratified this alleged wrongdoing. Highway Solutions did not list in its bankruptcy schedules any unsecured debt owed to Whitney Bank as a result of the overdrawn Deposit Account. When asked during the 341 Meeting of Creditors why the Deposit Account was omitted from the bankruptcy schedules, Anne Marcato (the managing member of Highway Solutions) responded that the Deposit Account was overdrawn due to a "**check that was a forged document**" which Highway Solutions disputed. (*In re Highway Solutions, LLC*, Transcript of 341 Meeting of Creditors, p. 32, attached hereto as **Exhibit "A"**) (emphasis added). In addition, it should be noted that the bankruptcies are not complete and remain open. The assertion that Highway Solutions ratified Mills' conduct is unsupported.

Assuming, however (for illustrative purpose only), that Mills' actions were ratified or authorized by Safety Guide and/or Highway Solutions, Mills remains jointly liable for the torts he committed. The ratification or authorization of a tort does not relieve the tortfeasor of liability. As early as 1928, the Alabama Supreme Court explained: "It is a well-settled proposition that all who participate in a wrong or tort, whether principal or agent, are equally guilty and liable to the party injured." *Tenn. Chem. Co. v. Cheatham*, 116 So. 420, 423 (Ala.

---

[4] Moreover, Mills' may have acted in two purported capacities here – both for Safety Guide (the issuer of the check) and Highway Solutions (the payee of the Check). Any ratification would have to come for both roles.

1923); *see also Rudisill Soil Pipe Co. v. Eastham Soil Pipe & Foundry Co.*, 97 So. 219 (Ala. 1923) (explaining that directors who participate in a tort perpetrated through the agency of a corporation or a fraudulent injury of another will be civilly liable). "'The fact that the circumstances are such as to render the corporation liable is altogether immaterial . . . . Corporate officers are liable for their torts, although committed when acting officially.'" *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983) (quoting FLETCHER'S CYCLOPEDIA OF CORPORATIONS, § 1135, at 202-03 (1975)).

These cases are distinguishable from *Galactic Employer Services, Inc. v. McDorman*, 880 So. 2d 434, 440 (Ala. Civ. App. 2003), a case cited by Mills for the proposition that "a mere corporate creditor cannot hold an officer or agent of a corporation responsible for a mere negligent or ultra vires act." (Brief at ¶ 28.) *Galactic Employer* merely held that an officer and director of a corporation were not personally liable for torts in which they did not actively participate (despite their alleged negligent hiring and supervision of the employee who committed the fraud). *Id.* at 435-36, 441-42. The Alabama Supreme Court explained in *Galactic Employer* that "officers and directors [are] personally liable for their active participation in an intentional tort." *Id.* at 437-38 (citing *Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001) and *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001)). A default judgment was entered against the employee tortfeasor. *Id.* at 435-36. However, because there was no evidence that the chairman or vice president personally participated in the fraud, they were not liable. *Id.* at 441. Nothing in *Galactic Employer* supports the argument that a tortfeasor is not liable if a corporation ratifies his wrongdoing.

In *Inter-Connect, Inc. v. Gross*, the Alabama Supreme Court examined whether an individual defendant could be held personally liable for his role in the tortious conduct of a realty

company. *Inter-Connect, Inc. v. Gross*, 644 So. 2d 867 (Ala. 1994). The court explained the "'well settled rule in this state that a person is liable for the torts which he or she commits, regardless of the capacity in which that person acts.'" *Id.* at 869 (quoting *Chandler v. Hunter*, 340 So. 2d 818, 822 (Ala. Civ. App. 1976)). "'When a person commits a tort, it is wholly immaterial upon the question of his liability, whether he was acting officially or personally.'" *Id.* (quoting *Chandler*, 340 So. 2d at 822) (in turn quoting *Finnell v. Pitts*, 132 So. 2, 4 (1930)). The court concluded that under this "well settled rule", the defendant could not "escape individual liability on the ground that he was acting in an official corporate capacity." *Id.*

There are other decisions following the well settled rule establishing liability for torts committed by corporate officers and employees. *See Consol. Constr. Co. of Ala. v. Metal Bldg. Components, L.P.*, 961 So. 2d 820, 824 (Ala. 2007) (explaining that the position or status of a corporate officer will not shield a defendant from individual liability in tort for their own actions); *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001) (holding that a corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort, is personally liable for the tort); *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999) (recognizing that a corporate president who makes false statements regarding completion of a contract to sell boat engines and generators to the plaintiff is personally liable for the fraudulent acts and omissions he personally commits in his capacity as a corporate officer).

Under Alabama law, ratification or authorization by Safety Guide and/or Highway Solutions of the torts committed by Mills does not relive Mills of his personal liability to Whitney Bank.

A.    **The holding in *CIT Financial Services, Inc. v. Bowler* does not support discharging Mills of liability, even if his actions were ratified**

The Brief cites as "instructive" and "helpful" the case of *CIT Financial Services, Inc. v. Bowler*, 537 So. 2d 4 (Ala. 1988). (Brief at ¶ 24, 26.)  In *CIT Financial*, the plaintiff brought an action for damages against her former husband and a lender, after the former husband obtained a loan (during the time they were married) secured with a second-mortgage on their jointly-owned home. *Id.* at 5. It was undisputed that another woman had posed as the plaintiff and forged the plaintiff's signature on the loan documents, in order to assist the former husband in obtaining the loan. *Id.* The jury returned a verdict in favor of the plaintiff, awarding her compensatory and punitive damages against the former husband, and compensatory damages against the lender. *Id.* On appeal to the Alabama Supreme Court, the lender argued that the trial court erred in refusing its requested jury charge on ratification. *Id.* The Alabama Supreme Court disagreed, affirming the damages and the trial court's voiding of the loan. *Id.* at 6.[5]

Why *CIT Financial* is cited in the Brief as "instructive" is puzzling at best.  In *CIT Financial*, the former husband (the tortfeasor) was liable for the loan and additional damages caused by his actions.  No language appears in *CIT Financial* to support the proposition that if the plaintiff had ratified the loan, the former husband's liability on the loan should be discharged. Yet Mills argues that if Safety Guide and/or Highway Solutions ratified the torts of Mills, his

---

[5] The Brief incorrectly states: "Under the scintilla rule, the Alabama Supreme Court held that the trial court erred in failing to instruct the jury on ratification." (Brief at ¶ 25).  The court's holding in *CIT Financial*, however, explained:

> The trial court in refusing to give the requested charge stated that ratification is not a defense to negligence or wantonness. The trial court is correct, and it was not error for it to refuse the requested charge on ratification, since only the claims on negligence and wantonness were submitted to the jury.

*CIT Fin. Servs.*, 537 So. 2d at 6.

The Alabama Supreme reversed the trial court's application of the Truth-in-Lending Act to the loan but affirmed the judgment as to the other claims. *Id.*

liability should be discharged. Further, in *CIT Financial*, it was the plaintiff seeking to discharge a loan and the defendant lender asserting that the plaintiff had ratified the loan. In the case at hand, Mills asserts that because a co-defendant ratified a tort, the plaintiff should be barred from bringing its claim against the tortfeasor. This argument is unsupported by *CIT Financial* and other relevant caselaw.

**B.    Section 7-3-403 of the Alabama Code does not support discharging Mills of liability, even if his actions were ratified**

As Mills notes in his Brief, section 7-3-403 of the Alabama Code provides that an unauthorized signature "'may be ratified for all purposes of this article.'" (Brief at ¶ 21) (quoting ALA. CODE § 7-3-403(a)). Therefore, assuming Mills signed the check and his signature was unauthorized, Safety Guide could have ratified the signature under section 7-3-403 of the Alabama Code. However, such ratification would not discharge Mills' liability because part (c) of that section states: "The civil or criminal liability of a person who makes an unauthorized signature is not affected by any provision of this article which makes the unauthorized signature effective for the purposes of this article." ALA. CODE § 7-3-403(c).

Based on its plain language, section 7-3-403 of the Alabama Code does not support dismissing the instant lawsuit against Mills.

**C.    The automatic stay applicable to Safety Guide, Highway Solutions and the Marcatos does not apply to Mills because Mills has not filed for bankruptcy**

The Motion to Dismiss asserted that Whitney Bank's lawsuit against Mills "is an unauthorized and illegal effort to circumvent the automatic stay applicable to the bankruptcy filings of Highway Solutions, Safety Guide and Mr. and Mrs. Marcato." (Motion to Dismiss, ¶ 13.) This argument is absent from the Brief, with the exception of the second sentence in the Summary of the Argument section. There, it is alleged that because Mills' actions were ratified by Safety Guide, "[t]hat ratification makes Mills' actions as an agent conclusively those of the

principal. Thus, the bankruptcy filings of Safety Guide and Highway Solutions act to require dismissal of these claims against Mills." (Brief at p. 1.)

Mills' stay argument should be deemed abandoned since he provides no support, whatsoever, for it. Further, it is wrong. It is well settled law that the bankruptcy stay applicable to those entities does not apply to Mills. Except in rare cases, the automatic stay imposed by 11 U.S.C. § 362(a)(1) applies only to proceedings against the debtor in bankruptcy. The Fifth Circuit Court of Appeals has explained:

> The automatic stay takes effect under 11 U.S.C. § 362(a)(1) upon the filing of a petition in bankruptcy and acts to stay any judicial "proceeding against the debtor." Its purposes are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse. . . . By its terms the automatic stay applies only to the debtor, not to co-debtors . . . nor to co-tortfeasors.

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (citing and quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)).

As one frequently cited case articulated, the automatic stay "does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtors." *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 263 (9th Cir. B.A.P. 1991); see also, *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (noting that bankruptcy "does not stay actions against guarantors"); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1990) (holding same); *In re The Russell Corp.*, 156 B.R. 347, 350 (Bankr. N.D. Ga. 1993) (refusing to extend the automatic stay to guarantors, noting that "Congress intended the automatic stay of section § 362 to protect the debtor . . . . It was not designed to benefit third parties . . . . Congress did not enact a codebtor stay in Chapters 7 and 11").

The argument that "the bankruptcy filings of Safety Guide and Highway Solutions act to require dismissal of these claims against Mills" is therefore wholly without legal merit.[6]

## II.    Whitney Bank is not Estopped from Pursuing its Claims against Mills

### A.    Judicial estoppel does not apply

Mills asserts that because Whitney Bank has sued multiple parties for the amounts owed pursuant to the Check, the doctrine of judicial estoppel prohibits Whitney Bank from pursuing its claims against Mills. (Brief at ¶ 35.)[7]  However, the doctrine of judicial estoppel does not prevent Whitney Bank from pursuing all parties liable for the damages it incurred. The mere fact that multiple parties are liable to Whitney Bank for the Check is no basis for judicial estoppel.

Mills, Safety Guide, the Marcatos and Highway Solutions were all sued by Whitney Bank on May 11, 2007. Although the amounts claimed against Safety Guide, the Marcatos and Highway Solutions include the amount of the Check, some parties are liable in different capacities and under different causes of action than Mills. For example, Highway Solutions is liable as the account holder of its Deposit Account with Whitney Bank, pursuant to an executed depositor account agreement. The Marcatos are liable as guarantors of all Highway Solutions' debts owed to Whitney Bank, pursuant to the commercial guaranty agreements executed by the Marcatos.

---

[6] Notably, before Highway Solutions filed bankruptcy, it attempted to convince Judge DeMent that a stay should be imposed on the claims against it because the owner of Highway Solutions (and guarantor of the applicable debts) – Anne Marcato – had filed bankruptcy. Judge DeMent refused. *Whitney Nat'l Bank v. Highway Solutions, LLC et al* (Case No. 2:07-cv-00415-ID-TFM) Docket Nos. 24-27.

[7] Paragraph 35 of the Brief states, in part: "Judicial estoppel has been successfully invoked against a litigant who took inconsistent positions in prior divorce and bankruptcy proceedings . . . . Clearly, Whitney Bank has alleged that several persons and entities are responsible for the $150,000.00 indebtedness made the subject of this lawsuit." (Brief at ¶ 35.)

Whitney Bank does not seek a double recovery of the damages it incurred. Any amount recovered from any defendant will be credited to the total amount owed to Whitney Bank. No inconsistent positions have been taken by Whitney Bank that warrant judicial estoppel.

### B.    Equitable estoppel does not apply

Citing the elements of equitable estoppel, Mills appears to argue that by suing Safety Guide, Highway Solutions and/or the Marcatos, Whitney Bank somehow made communications upon which Mills relied to his detriment, and therefore Whitney Bank is equitably estopped from pursuing its claims against Mills. (Brief at ¶ 37.) This argument is without legal or factual merit. First, it is a novel theory for a tortfeasor to assert equitable estoppel against a plaintiff on the basis that the tortfeasor "relied" on the plaintiff's "communications" of suing co-defendants for the tort. Second, Whitney Bank sued Mills simultaneously with the other defendants. There was never a time that Whitney Bank's claims were asserted against others and not Mills.

In addition, the Brief argues that Whitney Bank should be equitably estopped from bringing its claims against Mills, due to Whitney Bank's "picking and choosing" its defendants based on bankruptcy filings. (Brief at ¶ 38.) It is public knowledge that the bankruptcy filings of Safety Guide, the Marcatos and Highway Solutions all took place after May 11, 2007 (the date Whitney Bank filed suit against Safety Guide, the Marcatos, Highway Solutions and Mills). It is therefore inaccurate and misleading to assert that Whitney Bank has engaged in the inequitable behavior of "picking and choosing" its defendants based on bankruptcy filings.

### III.    Whitney Bank Pleaded its Fraud Claim Against Mills with Adequate Specificity to Avoid its Dismissal

In the Amended Complaint, Whitney Bank alleged it was proximately damaged as a result of its reasonable reliance upon the false statements, suppressions and omissions made by Mills. Specifically, Whitney Bank asserted that Mills knowingly (or in the alternative, with

wanton, reckless, negligent or innocent intent) (i) made a false representation, assuring Whitney

Bank that the Check would be honored, (ii) concerning a material existing fact, (iii) upon which

Whitney Bank reasonably relied, and (iv) as a proximate result, Whitney Bank was damaged.  In

addition, the Amended Complaint alleged that Whitney Bank was proximately damaged as a

result of the suppression by Mills of the material facts regarding the Check.  Mills had a duty to

disclose those material facts because of earlier statements made by Mills, the relationship of the

parties and the particular circumstances.[8]

"Misrepresentations of a material fact made willfully to deceive, or recklessly without

knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted

on by the opposite party, constitute legal fraud."  ALA. CODE § 6-5-101; *see also Money v.*

*Willings Detroit Diesel, Inc.*, 551 So. 2d 926, 927 (Ala. 1989).  Contrary to the assertions in the

Brief, Whitney Bank pleaded its fraud and suppression claims against Whitney Bank with

adequate specificity to avoid dismissal.[9]

Mills also contends that if his tortious acts were ratified by Safety Guide and/or Highway

Solutions, the Statute of Frauds bars Whitney Bank's fraud claim against Mills because "the

existence of an alleged agreement... cannot, consistent with the Statute of Frauds, be proven to

support a breach-of-contract claim, the Statute of Frauds also bars that agreement to support the

---

[8] Mills asserts that he "had no duty to anyone other than his principal." (Brief at ¶ 45.)  This is, of course, untrue.  He had a duty (among many others) not to make misrepresentations and not to indorse or deposit checks he knew were not good.

[9] Even if Whitney Bank's claims were not sufficiently pled with particularity, it should be granted leave to amend:

> [I]n most instances, when a motion based on a lack of sufficient particularity
> under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it
> will be with leave to amend the deficient pleading. . . . Thus, a failure to satisfy
> Rule 9(b) will not automatically lead to a dismissal of the action, let alone one
> that leads to a judgment on the merits.

5A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1300 (2007); *see also Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 568-69 (11th Cir. 1994).

tort claim." (Brief at p. 16 - 17.) This argument is nonsensical. Whitney Bank's fraud and suppression claims are based upon its reasonable reliance on the actions and statements of Mills. Whitney Bank's fraud claims do not depend upon whether an enforceable contract existed between Mills and Whitney Bank. The invalidity of the Check and the fraudulent actions and statements of Mills are not matters of contractual duties. (Of course, as to the underlying debt, the check itself (as well as the deposit slip) would satisfy any requirement of a writing under the Statute of Frauds. *See Rodgers v. Morris*, 790 So. 2d 970, 973 (Ala. Civ. App. 2001); *Dennis v. Holmes Oil Co., Inc.*, 757 So. 2d 479, 481-82 (Ala. Civ. App. 2000)). Whitney Bank paid the checks and other debits posted to the Deposit Account after accepting the Check. Therefore, the Statue of Frauds is not applicable to the fraud claims against Mills, even if Mills proves that Highway Solutions and/or Safety Guide ratified his actions.

## CONCLUSION

The Motion to Dismiss should be denied. Mills has failed to demonstrate that Whitney Bank can prove no set of facts in support of its claims against Mills. Whitney Bank has alleged sufficient claims against Mills and therefore should have the opportunity to prove those claims.

For the foregoing reasons, Whitney Bank requests that this Court enter an Order denying the Motion to Dismiss.

Respectfully submitted, this 4th day of January, 2008

/s/  Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  205-226-3426
Facsimile:  205-488-5870
gcook@balch.com

## CERTIFICATE OF SERVICE

I certify that on this 4th day of January, 2008, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification to the persons whose

addresses are listed below:

> Jack B. Hinton, Jr.
> Gidiere, Hinton, Herndon & Christman
> 904 Regions Tower
> 60 Commerce Street
> Montgomery, Alabama  36104
> *Attorney for Defendant Thomas J. Mills*


/s/   Gregory C. Cook
Of Counsel

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

In the matter of:                )
                                 )
HIGHWAY SOLUTIONS, LLC,          ) Case No. 07-31461
                                 ) Montgomery, AL
     Debtor.                     ) October 31, 2007

TRANSCRIPT OF 341 MEETING OF CREDITORS

APPEARANCES:

Michael Fritz
Bankruptcy Administrator's Office
One Church Street
Montgomery, AL 36104

Floyd R. Gilliland, Jr.
Nix, Holtsford, Gilliland, Higgins & Hitson
4001 Carmichael Rd., Ste 300
P. O. Box 4128
Montgomery, AL 36103

Transcriber:                     Patricia Basham
                                 6411 Quail Ridge Drive
                                 Bartlett, TN  38135
                                 901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

APPEARANCES (Continued):

Richard P. Carmody (Telephonically)
Adams and Reese LLP
2100 3rd Avenue North, Suite 1100
Birmingham, AL 35203-3367

Robert Deloach Reynolds
Reynolds, Reynolds, & Duncan, L.L.C.
PO Box 1389
Montgomery, AL 36102-1389

Paul Greenwood
Balch & Bingham LLP
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203

Patricia Allen Conover
US Attorney's Office
P. O. Drawer 197
Montgomery, AL 36101

Amanda M. Beckett
Burr & Forman LLP
420 20th Street North, Suite 3100
Birmingham, AL 35203

3

```
1              MR. FRITZ:  Today we are here for the 341 meeting of

2     Case No. 07-31461, Highway Solutions, LLC.

3              If you would please stand and raise your right hand.

4              (ANN MARCATO, WITNESS, SWORN)

5                          EXAMINATION

6     BY MR. FRITZ:

7     Q.      Please have a seat.  Please state your name.

8     A.      Ann Marcato.

9     Q.      What capacity do you represent the debtor?

10    A.      I am the managing member.

11    Q.      Is the debtor incorporated?

12    A.      LLC.

13    Q.      And when was it created?

14    A.      2002, I believe.

15    Q.      Who are the officers?

16    A.      I'm the sole member.

17    Q.      And the sole - I guess you don't have officers.

18    A.      Yes.  Correct.

19    Q.      Just to get this straight, there's no other members of

20    the LLC?

21    A.      That's correct.

22    Q.      Okay.  What's the general nature of your business?

23    A.      We do heavy construction.

24    Q.      In 2006, what salary did you receive from Highway

25    Solutions?
```

32

1    A.      Yes, I guess they should.  Yes.

2    Q.      Okay.  I just wanted to make sure -

3    A.      And we can amend that.

4    Q.      - there's no reason they were intentionally omitted.

5    A.      No.   No.   I've struggled with getting this stuff

6    together.

7    Q.      Sure.  Okay.  Now on Schedule F, creditors holding

8    unsecured non-priority claims, on page 27, I see Whitney Bank

9    listed there for unsecured credit card debt?

10   A.      Yes.  Okay.

11   Q.      That  $72,944,  is  that  just  based  on  the  last

12   correspondence with Whitney?

13   A.      Yes.  I think that number was pulled from our - off

14   the computer for the AP for that account.

15   Q.      And are you aware of an overdrawn deposit account with

16   Whitney Bank that Highway Solutions has?

17   A.      I am.

18   Q.      Okay.  Is there a reason it's not included on the

19   unsecured non-priority claims?

20   A.      That was a check that was a forged document, so that

21   would be disputed.

22   Q.      Okay.  So, is there - there's an overdrawn checking

23   account -

24   A.      Yes.

25   Q.      - at Whitney Bank.  Now would that be - on Statement

33

1    of Financial Affairs, item 11, Closed Financial Accounts.

2    A.        Okay.  Go ahead.

3    Q.        Is that the checking account number?

4    A.        Yes.

5    Q.        To the best of your knowledge?

6    A.        To the best of my knowledge.

7    Q.        Does it have the balance when it was closed?

8    A.        It's not listed here.

9    Q.        Okay.  Do you know what the balance was when it was

10   closed?

11   A.        I do not.

12   Q.        Now you say it wasn't included as an unsecured,

13   non-priority claim intentionally?

14   A.        You know, I'm not sure.  I would have to speak with my

15   attorney on his advisement as to whether or not to include that

16   or how to include it if we did.

17   Q.        Why would it not be included?

18   A.        I just need to confer with him on that.

19            MR. GREENWOOD:  I think that's all the questions I

20   have.  Thank you.

21            MR. FRITZ:  All right.  Any other creditors with

22   questions?  Yes, ma'am.  Go ahead.

23   BY MS. BECKETT:

24   Q.        I am Amanda Beckett.  I represent Caterpillar

25   Financial Services, Inc., and I have a couple of questions