**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:07-CV-414-MEF |
| | ) | |
| THOMAS J. MILLS and SAFETY GUIDE | ) | |
| OF ALABAMA, LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Comes now the defendant, Thomas J. Mills, by and through the undersigned counsel, and files this Motion for Summary Judgment. As grounds therefore and in support thereof, Defendant Mills relies on the following:

1.    Defendant Mills' Motion to Dismiss or in the Alternative, Motion to Stay First Amended Complaint (Doc. 34);

2.    Defendant Mills' Brief in Support of Motion to Dismiss (Doc. 37);

3.    Motion for Leave to File Notice of Correction (Doc. 40) and Order granting same (Doc. 41);

4.    Affidavit of Thomas J. Mills filed contemporaneously herewith;

5.    Defendant Mills' Brief in Support of Motion for Summary Judgment; and

6.    Various documents produced by Plaintiff Whitney National Bank in response to discovery but referred to in Mills' Affidavit.

WHERETOFORE PREMISES CONSIDERED, Defendant Thomas J. Mills respectfully requests this Honorable Court enter summary judgment on his behalf as there is no genuine issue of material fact.

1

Respectfully Submitted,

_____
Jack B. Hinton, Jr. (HIN020)
Attorney for the Defendant Thomas J. Mills

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, AL   36103
(334) 834-9950

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on the following by placing a copy of same in the United States mail, postage prepaid and properly addressed this 8th of February, 2008.

Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
P. O. Box 306
Birmingham, AL  35201-0306

_____
Jack B. Hinton, Jr.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK )<br><br>Plaintiff, )<br><br>v. )<br><br>THOMAS J. MILLS and SAFETY GUIDE )<br>OF ALABAMA, LLC. )<br><br>Defendants. ) | Case No.: 2:07-CV-414-MEF |

## MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO STAY FIRST AMENDED COMPLAINT

Comes now the defendant, Thomas J. Mills, by and through undersigned counsel, and moves to dismiss or in the alternative, stay Whitney National Bank's ("Whitney Bank) First Amended Complaint. As grounds therefore, defendant Mills states as follows:

1.      The First Amended Complaint alleges that defendant Mills was on March 12, 2007 the comptroller or controller of Safety Guide of Alabama, LLC ("Safety Guide") and Highway Solutions, LLC ("Highway Solutions") (Doc. 31 para. 7).

2.      Defendant Mills has admitted that on March 12, 2007 he was the treasurer for Highway Solutions and Safety Guide. (Doc. 14 para. 20).

3.      Whitney Bank acknowledges that Highway Solutions was its customer and that Safety Guide was a customer of "another bank". (Doc. 31 paras. 6 & 8).

4.      Whitney Bank acknowledges the application of the automatic stay pertaining to Safety Guide's previously filed bankruptcy. (Doc. 31 fn.1).

5.      On September 26, 2007, Highway Solutions filed a voluntary bankruptcy petition under Chapter 11 (07-31461). That petition remains presently pending in the Middle District before Judge William R. Sawyer.

6.      Whitney Bank remains a creditor of Highway Solutions with unsecured indebtedness totaling in excess of $550,000.00. (See "List of Creditors Holding 20 Largest Unsecured Claims" 07-31461, Doc. 5).

7.      In neither the bankruptcy petition filed by Safety Guide nor Highway Solutions is Tom Mills listed as a debtor to either of those companies.

8.      It is not alleged nor plead that Tom Mills is a co-obligor, co-signatory or co-debtor for any of the indebtedness of either Highway Solutions or Safety Guide.

9.      On May 11, 2007, Whitney Bank sued Highway Solutions and its members and managing members Michael and Anne Marcato. That case is styled "Whitney National Bank v. Highway Solutions, LLC; Michael C. Marcato and Anne S. Marcato 2:07-CV-415-ID". Among other things, that complaint in Count II paragraphs 53-63 alleges that Highway Solutions is corporately liable for the very same obligation forming the basis of this lawsuit. (For ease of reference, a copy of that May 11, 2007 complaint is attached herewith and made a part hereof as Exhibit A).

10.      Specifically, Whitney Bank alleged in its lawsuit against Highway Solutions that Highway Solutions breached its depositor's agreement with Whitney Bank relating to the business checking account specifically the $150,000.00 check made the subject of this lawsuit. (Exhibit A, paras. 54, 61-63).

11.      Both Mr. and Mrs. Marcato have also filed for bankruptcy protection and, according to Whitney Bank, have "failed or refused to honor the terms of their personal

2

guarantees of the debts of Highway Solutions" among which Whitney Bank contends is the overdrawn indebtedness in excess of the $150,000.00 check made the subject of this lawsuit.

12.     In its own filing within Highway Solutions' Chapter 11 bankruptcy case listed above, Whitney Bank recognized that on September 27, 2007, "the District Court ordered that, pursuant to 11 U.S.C. Section 3-6-2(a), the Lawsuit [Exhibit A] be stayed with respect to the Debtor." (07-31461-WRS Doc. 45, para. 14).

13.     Whitney Bank's suit against defendant Mills is an unauthorized and illegal effort to circumvent the automatic stay applicable to the bankruptcy filings of Highway Solutions, Safety Guide and Mr. and Mrs. Marcato.

14.     Taken as true, Whitney Bank's contention that "Highway Solutions may claim that the making of such $150,000.00 check was unauthorized", defendant Mills contends that, as a matter of law, Highway Solutions ratified the acts of defendant Mills by accepting the benefit of the $150,000.00 at issue serving to pay valid indebtednesses of Highway Solutions. In short, Highway Solutions has accepted the benefit of the bargain which Whitney Bank now ostensibly contends might be one done by defendant Mills without authorization.

15.     Mills is protected by virtue of the fact that he was the treasurer, or, as alleged in Whitney Bank's First Amended Complaint the "comptroller or controller of Safety Guide and Highway Solutions." Whitney Bank's effort to collect a corporate indebtedness from defendant Mills is an unauthorized and illegal effort to pierce the corporate veil of Highway Solutions. The bankruptcy petitions of Highway Solutions, Safety Guide and Mr. and Mrs. Marcato protect the actions of Mills where the done and

3

the exercise of his ordinary business activities or ultra vires due to the ratification of Highway Solutions.

16.    The citations to Alabama Code Sections 6-5-285 and 7-3-415 do not provide for a cause of action against an individual such as defendant Mills who is not a depositor, creditor or customer of Whitney Bank.

17.    Whitney Bank's purported claim for alleged fraud and/or suppression against Defendant Mills is insufficiently plead without sufficient detail and does not provide the requisite specificity as required by the Federal Rules of Civil Procedure pertaining to pleading causes of action for fraud and/or suppression.

WHERETOFORE PREMISES CONSIDERED, defendant Thomas J. Mills respectfully requests that this Honorable Court dismiss the First Amended Complaint against him. Alternatively, defendant Mills respectfully requests that this Court enter a stay of this action due to the bankruptcy petitions filed by 1) Highway Solutions, 2) Safety Guide and 3) Mr. and Mrs. Marcato.

**Defendant Desires Oral Argument on this Motion.**

Respectfully Submitted,

/s/_____
Jack B. Hinton, Jr. (HIN020)
Attorney for the Defendant Thomas J. Mills

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, AL  36103
(334) 834-9950

4

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on the following by placing a copy of same in the United States mail, postage prepaid and properly addressed this 27th of November, 2007.

Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
P. O. Box 306
Birmingham, AL  35201-0306

/s/_____
Jack B. Hinton, Jr.

5

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 6 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 1 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 1 of 13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

2007 MAY 11 A 9:47

WHITNEY NATIONAL BANK,

    PLAINTIFF

vs.

HIGHWAY SOLUTIONS, LLC;
MICHAEL C. MARCATO and
ANNE S. MARCATO,

    DEFENDANTS

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

CASE NO. 2:07CV415-1D

## COMPLAINT

Comes now Whitney National Bank (hereinafter "Whitney Bank") and states the following claim:

1.    Plaintiff Whitney Bank is a national bank having its main office in New Orleans, Louisiana. For diversity purposes, it is a citizen of the State of Louisiana. 28 U.S.C. § 1348. Wachovia Bank v. Schmidt, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006).

2.    Defendant Highway Solutions, LLC (hereinafter "Highway Solutions") is a limited liability company formed under the laws of the State of Alabama with its principal place of business located in the Montgomery, Alabama area and within the Middle District of Alabama, Northern Division. For diversity purposes, it is a citizen

1

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 7 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 2 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 2 of 13

of the State of Alabama. The managing member of Highway Solutions is Anne S. Marcato.

3.     Michael C. Marcato is a resident citizen of the State of Alabama residing in Montgomery within the Middle District of Alabama, Northern Division.

4.     Anne S. Marcato is a resident citizen of the State of Alabama residing in Montgomery within the Middle District of Alabama, Northern Division.

5.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     On January 5, 2005, Anne S. Marcato and Michael C. Marcato, as members of Highway Solutions, executed a Commerical Loan and Business Agreement for a Line of Credit of up to $500,000 with Whitney Bank. Also on that date, Anne S. Marcato as managing member of Highway Solutions, executed a promissory note for a business loan of $500,000 from Whitney Bank and a Commercial Security Agreement with Whitney Bank (hereinafter "Loan 81267). The due date for the note was January 5, 2006.

7.     On January 5, 2005, Michael C. Marcato, individually, executed a personal Commercial Continuing Guaranty of the current and future debts of Highway Solutions.

2

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 8 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 3 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 3 of 13

8.    On January 5, 2005, Anne S. Marcato, individually, executed a personal Commercial Continuing Guaranty of the current and future debts of Highway Solutions.

9.    On January 7, 2005, Michael C. Marcato and Anne S. Marcato opened a checking account with Whitney Bank for Highway Solutions and signed a depositor agreement with Whitney Bank relating to that account. Both were authorized to sign checks for Highway Solutions.

10.    On January 19, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $22,166.12 with a due date of January 19, 2010 (hereinafter loan number 1848-01).

11.    Also on January 19, 2005, Michael C. and Anne S. Marcato executed a Visa Business Card Application with Whitney Bank. The application contained individual personal guarantees by Michael C. and Anne S. Marcato.

12.    On January 24, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $29,995.72 with a due date of January 24, 2010 (hereinafter loan number 1848-02).

Case 2:07-cv-00414-MEF-WC     Document 44-2     Filed 02/08/2008     Page 9 of 19
   Case 2:07-cv-00414-MEF-WC     Document 34-2     Filed 11/27/2007     Page 4 of 14
      Case 2:07-cv-00415-ID-TFM     Document 1     Filed 05/11/2007     Page 4 of 13

13.    On February 7, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $42,949.76 with a due date of February 2, 2010 (hereinafter loan number 1848-03).

14.    On August 22, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $53,089.12 with a due date of August 22, 2010 (hereinafter loan number 1848-04).

15.    On October 18, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $50,653.82 with a due date of October 18, 2010 (hereinafter loan number 1848-05).

16.    Also on October 18, 2005, Anne S. Marcato as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $55,750.42 with a due date of October 18, 2010 (hereinafter loan number 1848-06).

17.    On January 9, 2006, the due date of loan 81267 was, among other things, changed to March 9, 2006.

4

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 10 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 5 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 5 of 13

18.    On March 28, 2006, the due date of loan 81267 was, among other things, changed to May 1, 2006 and the face amount of the loan was increased to $800,000. The due date was subsequently changed to June 30, 2006.

19.    On June 19, 2006, Anne S. Marcato, as managing member of Highway Solutions, executed Promissory Note in the amount of $200,000 with a due date of June 30, 2006 (hereinafter loan number 83467).

20.    On July 28, 2006, the due dates of loans 81267 and 83467 were changed to August 31, 2006.

21.    On September 8, 2006, Anne S. Marcato, as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $97,702 with a due date of September 7, 2011 (hereinafter loan number 3498).

22.    Also on September 8, 2006, Anne S. Marcato, as managing member of Highway Solutions, executed a Commercial Security Agreement and Promissory Note in the amount of $64,676 with a due date of September 7, 2011 (hereinafter loan number 3499).

23.    Subsequently, Anne S. Marcato, as managing member of Highway Solutions, executed Change of Terms Agreements relating to loans 83467 and 81267 changing the due dates initially to January 31, 2007 and finally to March 1, 2007.

Case 2:07-cv-00414-MEF-WC     Document 44-2     Filed 02/08/2008     Page 11 of 19
Case 2:07-cv-00414-MEF-WC     Document 34-2     Filed 11/27/2007     Page 6 of 14
Case 2:07-cv-00415-ID-TFM     Document 1     Filed 05/11/2007     Page 6 of 13

## COUNT I: HIGHWAY SOLUTIONS LOANS

24. Whitney Bank incorporates in this Count all prior paragraphs of the complaint.

25. Highway Solutions has overdrawn the line of credit represented by loan 81267.

26. Highway Solutions has defaulted on all loans with Whitney Bank.

27. Highway Solutions has breached all agreements with Whitney Bank.

28. Commercial Loan 1848–01 is past due and owing since March 19, 2007.

29. Commercial Loan 1848–02 is past due and owing since February 24, 2007.

30. Commercial Loan 1848–03 is past due and owing since February 7, 2007.

31. Commercial Loan 1848–04 is past due and owing since February 22, 2007.

32. Commercial Loan 1848–05 is past due and owing since February 18, 2007.

33. Commercial Loan 1848–06 is past due and owing since February 18, 2007.

34. Commercial Loan 3498 is past due and owing since February 7, 2007.

35. Commercial Loan 3499 is past due and owing since February 7, 2007.

36. Commercial Loan 81267 is past due since its maturity on March 1, 2007 when the entire outstanding balance of principal and accrued interest became fully due and owing.

37. Commercial Loan No. 83467 is past due since its maturity on March 1, 2007 when the entire outstanding balance of principal and accrued interest became fully due and owing.

6

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 12 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 7 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 7 of 13

38.    The Highway Solutions Visa Credit card is past due and owing.

39.    On May 10, 2007, Whitney Bank accelerated all Highway Solutions loans thereby making the unpaid principal amounts, all accrued and unpaid interest and all accrued fees and other obligations immediately due and payable in full.

40.    Highway Solutions has failed or refused to pay off the loans as accelerated.

41.    As of May 10, 2007 Highway Solutions owed $910,500.64 on note 81267 with per diem interest of $204.21.

42.    As of May 10, 2007 Highway Solutions owed $204,537.49 on note 83467 with per diem interest of $45.84.

43.    As of May 10, 2007 Highway Solutions owed $93,607.22 on note 3498 with per diem interest of $21.54.

44.    As of May 10, 2007 Highway Solutions owed $62,095.02 on note 3499 with per diem interest of $14.26.

45.    As of May 10, 2007 Highway Solutions owed $54,222.27 on its Visa Business Credit Cards with various per diem interest rates.

46.    As of May 10, 2007 Highway Solutions owed $14,686.27 on loan 1848-01 with per diem interest of $3.30.

47.    As of May 10, 2007 Highway Solutions owed $20,508.21 on loan 1848-02 with per diem interest of $4.56.

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 13 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 8 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 8 of 13

48.    As of May 10, 2007 Highway Solutions owed $28,365.37 on note 1848-03 with per diem interest of $6.34.

49.    As of May 10, 2007 Highway Solutions owed $41,062.63 on note 1848-04 with per diem interest of $7.48.

50.    As of May 10, 2007 Highway Solutions owed $41,319.05 on note 1848-05 with per diem interest of $8.05.

51.    As of May 10, 2007 Highway Solutions owed $45,206.04 on note 1848-06 with per diem interest of $8.81.

52.    Whitney Bank has incurred attorneys' fees and other costs in connection with the collection of these defaulted loan obligations.

WHEREFORE, Whitney Bank demands judgment against Highway Solutions for the entire unpaid balances of the above loans, all accrued and unpaid interest, all accrued fees and other obligations, including, but not limited to, attorneys' fees and expenses incurred in the collection of these loans.

8

Case 2:07-cv-00414-MEF-WC     Document 44-2     Filed 02/08/2008     Page 14 of 19
Case 2:07-cv-00414-MEF-WC     Document 34-2     Filed 11/27/2007     Page 9 of 14
Case 2:07-cv-00415-ID-TFM     Document 1     Filed 05/11/2007     Page 9 of 13

## COUNT II: HIGHWAY SOLUTIONS BREACH OF DEPOSITOR'S AGREEMENT

53.     Whitney Bank incorporates in this Count all previous paragraphs of the complaint.

54.     Highway Solutions has a depositor's agreement with Whitney Bank relating to its business checking account.

55.     Upon information and belief, Safety Guide is managed by Michael C. Marcato.

56.     Upon information and belief Safety Guide and Highway Solutions are related business entities with common management.

57.     Upon information and belief, Tom Mills was, on that date, the comptroller or controller of Safety Guide and Highway Solutions.

58.     On March 12, 2007, an officer or employee entrusted with the checks of Highway Solutions wrote an $80,000 check on its Whitney Bank account payable to Safety Guide of Alabama, LLC ("Safety Guide") which was deposited into a Safety Guide's account at another bank and subsequently honored by Whitney Bank.

59.     Also on March 12, 2007, an officer or employee entrusted with the checks of Safety Guide issued a check on its account with another bank to Highway Solutions in the amount of $150,000 which was deposited with Whitney Bank on that date.

60.     Officers or employees of Highway Solutions immediately began writing checks drawn on its Whitney Bank account and depleted the deposited amount.

9

Case 2:07-cv-00414-MEF-WC   Document 44-2   Filed 02/08/2008   Page 15 of 19
Case 2:07-cv-00414-MEF-WC   Document 34-2   Filed 11/27/2007   Page 10 of 14
Case 2:07-cv-00415-ID-TFM   Document 1   Filed 05/11/2007   Page 10 of 13

61.    After Highway Solutions had depleted the deposited funds, the Safety Guide check was dishonored by Safety Guide's bank.

62.    Highway Solutions' account with Whitney Bank is now overdrawn in an amount in excess of $150,000.

63.    Highway Solutions has failed or refused to honor the depositor's agreement and bring its checking account current.

WHEREFORE, Whitney Bank demands judgment against Highway Solutions for breach of its depositor's agreement with Whitney Bank, plus interest, attorneys' fees and costs.

### COUNT III: MICHAEL C. AND ANNE S. MARCATO PERSONAL GUARANTIES

64.    Whitney Bank incorporates in this Count all prior paragraphs of the complaint.

65.    Michael C. and Anne S. Marcato, separately and individually, have provided continuing unlimited commercial guaranties for the debts of Highway Solutions to Whitney Bank.

66.    On April 12, 2007, Whitney Bank notified Michael C. and Anne S. Marcato of the acceleration of all Whitney Bank loans to Highway Solutions.

67.    Michael C. and Anne S. Marcato have failed or refused to honor the terms of their personal guaranties of the debts of Highway Solutions.

10

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 16 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 11 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 11 of 13

WHEREFORE, Whitney Bank demands judgment against Michael C. Marcato and Anne S. Marcato for the entire overdraft amount of the Highway Solutions checking account and the entire unpaid balances of all loans to Highway Solutions, all accrued and unpaid interest, all accrued fees and other obligations, including, but not limited to attorneys' fees and expenses incurred in the collection of these loans.

## COUNT IV: ASSEMBLY OF COLLATERAL AND APPOINTMENT OF RECEIVER FOR HIGHWAY SOLUTIONS COLLATERAL

68.    Whitney Bank incorporates in this Count all prior paragraphs of the complaint.

69.    The management of Highway Solutions has failed to establish and maintain adequate controls and to use best management practices to conduct the business of Highway Solutions.

70.    The management of Highway Solutions appears incapable of providing basic financial information concerning the location and value of the collateral.

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 17 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 12 of 14
Case 2:07-cv-00415-ID-TFM    Document 1    Filed 05/11/2007    Page 12 of 13

71.    The management of Highway Solutions appears unwilling or unable to continue the effective and efficient management of Highway Solutions or the pursuit of existing claims of Highway Solutions which involve collateral securing the loans.

72.    The commercial security agreements mentioned above provide that Whitney Bank may require Highway Solutions to deliver all or any portion of the collateral and all certificates of title and other documents relating to the collateral.

73.    The commercial security agreements mentioned above give Whitney Bank the right to have a receiver appointed to protect and preserve the collateral, operate the collateral preceding foreclosure or sale, and to collect the rents from the collateral and apply the proceeds, over and above the cost of the receivership, against the indebtedness.

WHEREFORE, Whitney Bank prays for this Court to appoint a receiver to assemble and take possession of the collateral for the loans, to operate Highway Solutions preceding foreclosure or sale, and to collect the rents from the collateral, with the power to collect and apply the proceeds, over and above the cost of the receivership, against the indebtedness.

Dennis R. Bailey (4845-i71d)
Bowdy J. Brown
Attorneys for Plaintiff

12

Case 2:07-cv-00414-MEF-WC   Document 44-2   Filed 02/08/2008   Page 18 of 19
Case 2:07-cv-00414-MEF-WC   Document 34-2   Filed 11/27/2007   Page 13 of 14
Case 2:07-cv-00415-ID-TFM   Document 1   Filed 05/11/2007   Page 13 of 13

Of counsel:
RUSHTON, STAKELY, JOHNSTON
   & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 262-0033 (fax)
drb@rsjg.com (e-mail)

Serve Defendants As Follows:

Highway Solutions, LLC
C/O Anne S. Marcato, Registered Agent
552 Oliver Road
Montgomery, AL. 36117

Michael S. Marcato
3375 Thomas Avenue
Montgomery, AL. 36107

Anne S. Marcato
3375 Thomas Avenue
Montgomery, AL. 36107

Case 2:07-cv-00414-MEF-WC    Document 44-2    Filed 02/08/2008    Page 19 of 19
Case 2:07-cv-00414-MEF-WC    Document 34-2    Filed 11/27/2007    Page 14 of 14

Case 2:07-cv-00415-ID-TFM    Document 37    Filed 09/27/2007    Page 1 of 1

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **WHITNEY NATIONAL BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIV. ACT. NO. 2:07cv415-ID** |
| **v.** | ) |
| | ) |
| **HIGHWAY SOLUTIONS, LLC, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### ORDER

Before the court is a Notice of Stay of Proceedings (Doc. No. 36), by which

Defendant Highway Solutions, LLC, notifies the court that it has filed a Chapter 11

bankruptcy petition. Accordingly, it is CONSIDERED and ORDERED that, pursuant to

11 U.S.C. § 362(a), this litigation with respect to Defendant Highway Solutions, LLC, be

and the same is hereby STAYED.

The Marcato Defendants and Defendant Highway Solutions, LLC, are hereby

DIRECTED to file a report with the court on December 6, 2007, as to the status of their

respective bankruptcy proceedings and again on February 28, 2008, if necessary.

It is further CONSIDERED and ORDERED that Plaintiff Whitney National

Bank's Motion for Summary Judgment as to Defendant Highway Solutions, LLC, (see

Doc. No. 34) be and the same is hereby DENIED without prejudice with leave to renew

when the stay has been lifted.

DONE this 27th day of September, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:07-CV-414-MEF |
| | ) | |
| THOMAS J. MILLS and SAFETY GUIDE | ) | |
| OF ALABAMA, LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Comes now the defendant, Thomas J. Mills, by and through the undersigned counsel, and for compliance with this Court's Order of December 7, 2007 (Doc. 35), files this Brief in Support of Motion to Dismiss (Doc. 34).

### Summary of Argument

First, Mills contends that his employers Highway Solutions LLC ("Highway Solutions") and/or Safety Guide of Alabama LLC ("Safety Guide") ratified his allegedly unauthorized acts thereby insulating him from individual liability to Whitney Bank. That ratification makes Mills' actions as an agent conclusively those of the principal. Thus, the bankruptcy filings of Safety Guide and Highway Solutions act to require dismissal of these claims against Mills.[1]

Second, Mills contends that Whitney Bank is judicially and/or equitably estopped from asserting these claims against him due to Whitney Bank's inconsistent positions, past dealings with Highway Solutions and Whitney Bank's claims asserted against Safety Guide and Highway Solutions in their respective bankruptcies.

---

[1] Through research in preparation for this brief, counsel for Mills has learned that the Doctrine of Judicial Notice (See Footnote 2) as applicable to other court proceedings such as the bankruptcy filings referenced herein may act to convert Mills' Motion to Dismiss into a Motion for Summary Judgment. Should the Court chose to convert, Mills respectfully requests an opportunity for the submission of matters beyond the pleadings.

1

Third, Whitney Bank's fraud claims are barred by the Statute of Frauds and the defenses enunciated in the above paragraphs.

### Background: The Highway Solutions' Lawsuit

1.      On May 11, 2007, Whitney National Bank ("Whitney Bank") sued Highway Solutions, Michael C. Marcato and Ann S. Marcato in the United States District Court for the Middle District of Alabama Northern Division Case No. 07-CV-415-ID[2].  In that Complaint, Whitney Bank claimed inter alia that in January of 2005, Mr. and Mrs. Marcato opened a checking account with Whitney Bank for Highway Solutions and signed a depositor agreement relating to that account.  Both Mr. and Mrs. Marcato were authorized to sign checks for Highway Solutions.  (Complaint para. 9).

2.      Mr. and Mrs. Marcato also executed two lines of credit with Whitney Bank during 2005 and 2006 ultimately resulting in the amounts of those lines of credit increasing to over $800,000.00 and $200,000.00 respectively.  (Complaint paras. 6, 18-20, 23, and 39-42).

3.      Both Mr. and Mrs. Marcato individually executed personal guarantees for the current and future indebtedness of Highway Solutions to Whitney Bank.  (Complaint para. 8).

4.      The Complaint alleges inter alia that Highway Solutions breached its depositor's agreement with Whitney Bank when on March 12, 2007, an officer or employee "entrusted with the checks of Highway Solutions" wrote an $80,000.00 check on its Whitney Bank account payable to Safety Guide of Alabama, LLC ("Safety Guide").[3]  (Complaint para. 58).

---

[2] Mills requests this Court to take judicial notice of that case's filings  "A District Court may take judicial notice of public records within its files relating to the particular case before it or other related cases "  Cash Inn of Dade, Inc. v. Metropolitan Dade County 938 F 2d 1239, 1243 (11th Cir 1991)  See also State of Fla. Bd. of Trustees of the Int. Improvement Trust Fund v. Charlie Toppino & Sons, Inc. 514 F 2d 700, 704 (5th Cir 1975)  Fed. R. Evid 201

[3] Safety Guide is a sister company of Highway Solutions and has the same ownership as Highway Solutions.  Tom Mills was alleged to have been "the comptroller or controller" of both Safety Guide and Highway Solutions on March 12, 2007.  (Complaint para. 56).

2

5.    The Complaint also alleges that on March 12, 2007, an officer or employee "entrusted with the checks of Safety Guide issued a check on its account with another bank to Highway Solutions in the amount of $150,000.00 which was deposited with Whitney Bank on that date." (Complaint para. 59).

6.    Whitney Bank asserts that Highway Solutions utilized the entirety of the $150,000.00 deposit to write checks on its Whitney Bank account depleting the deposited funds in their entirety. (Complaint paras. 60, 61).

7.    After all of the deposited funds which were the subject of the Safety Guide check had been depleted by various Highway Solutions' checks, the Safety Guide check was dishonored by its bank. (Complaint paras. 61, 62).

8.    Whitney Bank's Complaint alleges that Highway Solutions has failed or refused to honor the depositor's agreement and bring its checking account current. (Complaint para. 63). Additionally, Whitney Bank contends that Mr. and Mrs. Marcato have failed to honor their obligations under their personal guarantees for the indebtedness of Highway Solutions.

9.    In summary, the May 11, 2007 Complaint referenced above asserts that Highway Solutions and Mr. and Mrs. Marcato owe Whitney Bank in excess of $1,100,000.00 on two separate lines of credit (Complaint paras. 41, 42)[4] and in excess of $150,000.00 in overdraft charges in violation of their depositor's agreement.

10.    Due to the individual bankruptcy filings of Mr. and Mrs. Marcato, Judge DeMent also ordered a stay of the Whitney Bank case against them pursuant to his Order of July 18, 2007. (Doc. 24).

---

[4] As of September 26, 2007, Highway Solutions owed principal and interest to Whitney Bank on a credit line note number 81267 in the amount of $938,786.46. As of September 26, 2007, Highway Solutions owed Whitney Bank $210,886.00 of principal and interest on credit line note number 83467. The per diem on note 81267 is $204.21. The per diem on note 83467 is $45.83. See Doc. 34 pages 2 and 9 of CV-07-415-ID

11.    So confident was Whitney Bank in its position against Highway Solutions in that case that it filed a Summary Judgment Motion. (Doc. 34). In that Motion in CV-07-415 filed September 11, 2007, Whitney Bank stated as follows:

"**B. The Deposit account**

It is undisputed that Highway Solutions executed the Depositor Agreement. The Deposit Account is overdrawn and Highway Solutions has failed to satisfy its debt to Whitney Bank. Consequently, as of June 10, 2007, Whitney Bank has suffered damages in the principal amount of One Hundred Forty-Nine Thousand Six Hundred Ninety-Nine and 23/100 Dollars ($149,699.23). Whitney Bank continues to suffer damages as costs of collection, including without limitation, attorneys' fees continue to accrue.

As evidenced by the relevant pleadings and exhibits attached hereto, Whitney Bank is entitled to judgment **as a matter of law** due to Whitney Bank's performance, the non-performance of Highway Solutions, and the resulting damages to Whitney Bank. In addition, the Depositor Agreement is unambiguous, the damages are certain and the facts are undisputed. Accordingly, Whitney Bank's Motion for Summary Judgment is due to be granted as to Count II of the Complaint."

(emphasis added).

12.    But, on September 27, 2007, Judge DeMent also stayed that action (CV-07-415-ID) acknowledging the Chapter XI Bankruptcy Petition of Highway Solutions. (Doc. 37).

## The Safety Guide Lawsuit

13.    On the same day it sued Highway Solutions and Mr. and Mrs. Marcato, Whitney Bank filed this nearly identical action against Safety Guide and Mr. Mills. This time, Whitney Bank argues that Safety Guide via an officer or employee entrusted with its checks issued a $150,000.00 check on another bank to Highway Solutions which Highway Solutions deposited in its Whitney Bank checking account. (Complaint para. 9).

4

14.    The first count of Whitney Bank's Complaint is entitled "Safety Guide Dishonored Check" and claims that Safety Guide is obligated to pay Whitney Bank $150,000.00 due to the dishonored and returned check. Additionally, count two of the Complaint entitled "Tom Mills Unauthorized Signature on Check" asserts that Mills executed the $150,000.00 check from Safety Guide's Wachovia bank account to Highway Solutions without authorization. Specifically, Whitney Bank contends that Mills forged the signatures of those authorized to issue the check in question. (Complaint para. 22).

15.    By Order of this Court (Doc. 21), Safety Guide was dismissed without prejudice from this action due to it having filed a voluntary Chapter XI Petition in the United States Bankruptcy Court for the Middle District of Alabama (Case No. 07-30976) on July 12, 2007

16.    Whitney Bank filed its First Amended Complaint (Doc. 31) on October 30, 2007. That First Amended Complaint acknowledges the automatic stay applicable to all of Whitney Bank's claims against Safety Guide (Doc. 31 fn. 1) and admits that it was not taking any action with regard to Safety Guide. (Id.)

17.    Whitney Bank essentially repeats its earlier allegations fleshing them out in a little more detail and citing different code sections under Alabama law. Specifically, in count two, Whitney Bank alleges that Mills is liable under § 6-5-285 based on the "information and belief" that Mr. Marcato and/or Highway Solutions "may claim" that the $150,000.00 check from Safety Guide to Highway Solutions was unauthorized and was made by Mr. Mills. (Complaint para. 18). Additionally, Whitney Bank claims that Mills is liable under § 7-3-415 requiring him to pay the amount due on the instrument according to its terms at the time it was endorsed. (Complaint para. 24). Lastly, Whitney Bank argues that Mills is liable for fraud and suppression by signing

5

the $150,000.00 check without authority thus arguably rising to the level of knowingly making a false statement to Whitney Bank.

     18.    Tom Mills filed a Motion to Dismiss or in the Alternative Motion to Stay Whitney Bank's First Amended Complaint. (Doc. 34).

## Argument

     19.    Assuming everything Whitney Bank has said in its Complaint and its Amended Complaint to be true, Mills' Motion to Dismiss is due to be granted because of the ratification of Mills' alleged unauthorized signature. Also, Whitney Bank is estopped to pursue its claim against Mills based on its assertions in other litigation to and including the above referenced case of Whitney National Bank v. Highway Solutions, LLC, Michael C. Marcato and Ann S. Marcato, 07-CV-415-ID and the respective bankruptcy filings of Michael C. Marcato and Ann S. Marcato (Case No. 07-30824 filed June 10, 2007), Highway Solutions (Case No. 07-31461 filed September 26, 2007), and Safety Guide (Case No. 07-30976 filed July 12, 2007) All assigned to Judge William R. Sawyer. Lastly, Whitney Bank's fraud claim is insufficiently plead and is likewise barred by the ratification and estoppel doctrines.

### I. Ratification.

     20.    Mills contends that the allegedly unauthorized act on his part in writing the $150,000.00 check from the account of Safety Guide and depositing it into the account of Highway Solutions was a transaction ratified by either or both companies.

     21.    Section 7-3-403 Code of Alabama 1975 deals with unauthorized signatures on negotiable instruments. It holds in part that an unauthorized signature "may be ratified for all

6

purposes of this article." Section 7-3-403(a). In the official comments to that Code Section, the

following is found:

> "The last sentence of subsection (a) allows an unauthorized signature to be ratified. Ratification is a retroactive adoption of the unauthorized signature by the person whose name is signed and may be found from conduct as well as from express statements. For example, it may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature. Although the forger is not an agent, ratification is governed by the rules and principles applicable to ratification of unauthorized acts of an agent.
>
> Ratification is effective for all purposes of this Article. The unauthorized signature becomes valid so far as its effect as a signature is concerned. Although the ratification may relieve the signer of liability on the instrument, it does not of itself relieve the signer of liability to the person whose name is signed ..."

(emphasis added). The meaning of ratification for purposes of Negotiable Instruments

Law is not dissimilar from its general meaning in the Law of Agency. Thermo

Contracting Corp. v. Bank of New Jersey, 354 A.2d 291, 295-96 (N.J. 1976):

> "Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

Thermo Contracting citing § 82 of Restatement Agency Second (1957)[5].

22.    Alabama law is of a similar nature.

> "If with full knowledge of the unauthorized act ... , defendant had accepted and retained the proceeds, defendant would have been bound as for a ratification of the act, but not where it had no knowledge of the unauthorized transaction at the time of such acceptance."

---

[5] The Eleventh Circuit has cited Thermo Contracting Corp. v. Bank of New Jersey, 69 N J 352, 354 A.2d 291, 296-97 (1976) with approval. Thermo Contracting has also been cited by the Alabama Supreme Court in CitiBanc of Alabama/Fultondale v. Tricorp. Energies, Inc., 493 So 2d 1344 (Ala. 1986)

University Chevrolet Company v. Bank of Moundville, 25 Ala. App. 506, 150 So. 57 (Ala. App.

1933). "A ratification occurs when a principal retains the benefits resulting from his agent's

unauthorized acts with knowledge of the material facts surrounding the transaction." CIT

Financial Services, Inc. v. Bowler, 537 So.2d 4 (Ala. 1988) (citations omitted). Although the

principal (here, either Safety Guide or Highway Solutions) has a right to presume that his agent

will act only within the sphere of his authority, where there are circumstances sufficient to put

one of reasonable prudence on inquiry, the principal is held to a diligence to ascertain the fact

that the agent acted beyond his authority. University Chevrolet at 508. Ratification of an agent's

acts can be shown where the master retains the benefits of the transaction knowing them to be

the product of the servant's unauthorized endeavors. See Owens v. Wood, 43 Ala. App. 366,

190 So.2d 734 (Ala. App. 1966).

> "A principal can be held responsible for an act of his agent, which was committed beyond the scope of the agent's authority by subsequently ratifying such act. Ratification by the principal of an act of his agent requires an intent on the part of the principal to ratify such act. This intention may be expressed or implied, and may be inferred where there is evidence intending to show that the principal, with adequate knowledge of the facts and circumstances, so conducted himself as to indicate his purpose to confirm or adopt the authorized act of his agent."

Alabama Pattern Jury Instruction 3.12.

23.    Here, taken as true, Mills unauthorizedly signed a $150,000.00 check from the

Wachovia Bank account of Safety Guide and deposited it into the Whitney Bank account of

Highway Solutions. But for the allegation that Mills forged one of the Marcatos' signatures, the

transaction was wholly within the line and scope of what Mills would ordinarily do as the

comptroller/controller and/or treasurer of those two entities.

24.    The case of <u>CIT Financial Services, Inc. v. Bowler</u>, 537 So.2d 4 (Ala. 1988) is instructive here. It involved an appeal from a trial court's refusal to charge the jury on the defense of ratification. In that case a dispute arose between a lender and a divorced couple. The husband obtained a loan from CIT Financial and secured it with a second mortgage on the jointly owned home during the marriage. The wife's signature was indisputably forged. The dispute centered around whether the wife had ratified that forgery.

25.    Under the scintilla rule, the Alabama Supreme Court held that the trial court erred in failing to instruct the jury on ratification. Factually, the record showed that the wife was at home when the appraiser appraised the home for the second mortgage, the loan proceeds were deposited into the husband and wife's joint checking account and the wife discovered the loan documents two or three months after the closing. Also, the wife knew that substantially all of the loan proceeds had been deposited into their joint checking account. She had written several checks on that account after the deposit. Lastly, approximately eleven months after the loan was closed, the husband and wife divorced and the second mortgage was one of the issues in that divorce. The wife ultimately filed suit alleging inter alia that her signatures on the loan documents were forgeries and asking the Court to declare the note and mortgage void.

26.    There is no factually identical case in Alabama law on point for the facts before this Court. However, the <u>CIT Financial</u> case referenced above is helpful. Although it was undisputed that the wife's signature on the loan documents were forgeries, she accepted the benefit of the transaction by acknowledging that the loan proceeds were deposited into a joint checking account. She actually used some of those proceeds. She did not complain until months later when it appeared to her advantage in a lawsuit to do so.

9

27.    As clearly alleged by Whitney, Highway Solutions utilized the financial benefit of

the $150,000.00 deposit and paid many of its obligations[6]. The signatures on all those many

checks has not been alleged to be forged. The lack of objection by the principal conclusively

establishes Mills' act as one of its agents.

28.    As a general rule, a mere corporate creditor cannot hold an officer or agent of a

corporation responsible for a mere negligent or ultra vires act as distinguished from a fraudulent[7]

transfer or misapplication of corporate assets from the payment of corporate debts. Galactic

Employer Services, Inc. v. McDorman, 880 So.2d 434, 440 (Ala. Civ. App. 2003). Agents of a

corporation are trustees for the stockholders but not for the creditors whether the corporation is

solvent or insolvent. Galactic at 440-41. (Citations omitted.)

29.    A ratification once effected cannot later be revoked even where the ratification

may have been induced by the anticipation of benefits which fail to accrue. Thermo Contracting,

supra, citing Restatement of Agency. A principal must either ratify the entire transaction or

repudiate it entirely and cannot pick and choose only what is advantageous to him. Thermo

Contracting, supra. Stated another way, the principal cannot ratify that part of the transaction

---

[6] On October 25, 2007, Highway Solutions, LLC filed a Summary of Schedules as part of its voluntary petition in Chapter XI bankruptcy. (See Document 61 in CV-07-31461.) It lists no checking, savings or other financial accounts. It lists over $6,000,000.00 in accounts receivable, none of which are against Whitney Bank, Wachovia, Safety Guide or Tom Mills. Highway Solutions does not list any of these entities as a contingent and/or unliquidated claim of any nature nor does it list any counterclaim or right to set off relative to any of these persons or entities. None of these are listed as holders of unsecured claims entitled to priority (at least not as to the Whitney Bank checking account at issue). Safety Guide is not listed as a creditor holding an unsecured non-priority claim either.

Highway Solutions swore and affirmed in its Statement of Financial Affairs that it had no payment or other transfer to any creditor made within ninety days immediately preceding the commencement of the bankruptcy filing where that value exceeded $5,475.00. ("Statement of Financial Affairs" p. 2)

[7] One of the three causes of action being prosecuted by Whitney Bank against Mills is that of fraud. For reasons stated in other sections of this brief, Whitney Bank's fraud claim fails to state a claim upon which relief can be granted due to the application of the Statute of Frauds.

10

which is advantageous to himself while repudiating the burdensome part. Id. citing Restatement

of Agency. See also 18 B Am. Jur. 2d Corporations § 1422.

    30.    Section 7-3-402 provides in part that a person acting "or purporting to act, as a

representative signs an instrument by signing either the name of the represented person or the

name of the signer, the represented person is bound by the signature to the same extent the

represented person would be bound if the signature were on a simple contract." Here, clearly,

even taken all allegations as true, Mills was "purporting to act" on behalf of Safety Guide when

he signed Safety Guide's check made payable to Highway Solutions. Further, he was acting or

"purporting to act" on behalf of Highway Solutions when he endorsed the Safety Guide check

and deposited it in the Highway Solutions Whitney Bank checking account. There is no

assertion to the contrary. There is no assertion that Mills received any benefit from this

transaction. Again, as stated earlier, the only reason this endorsement is now an issue is because

Safety Guide ran out of credit with Wachovia and Highway Solutions ran out of credit with

Whitney Bank[8].

    31.    Ford Motor Credit Company v. Pescia, is an unreported decision by Judge

DeMent released May 14, 2001. There, Judge DeMent quotes Black's Law Dictionary 7th

Edition 1999 defining ratification as follows:

> "A person's binding adoption of an act already
> completed but either not done in a way that originally produced

---

[8] Whitney Bank does not appear concerned that for months prior to the transaction at issue, it continued to allow massive and multiple overdrafts on the account of Highway Solutions See e.g. Doc. 34 "Motion for Summary Judgment as to Defendant Highway Solutions LLC" filed September 11, 2007 in CV-07-415-ID specifically pages 9 through 34 of Exhibit 7. It is clear that so long as Highway Solutions had available sums from its credit line to continually cover "bad" checks, Whitney was content to draw down Highway Solutions' credit lines, deposit those sums regularly into Highway Solutions' checking account and happily take overdraft and insufficient funds charges against Highway Solutions' account. Only when the credit lines maxed out did Whitney complain about the transaction at issue in this case

> a legal obligation or done by a third party having at the time no
> authority to act as the person's agent."

Judge DeMent noted that if a person is going to reap the benefit of the contract, he or she must also bear the obligation. Here, although that argument does not apply in its entirety to Whitney Bank, it certainly applies to Safety Guide and/or Highway Solutions. Either Safety Guide owed Highway Solutions $150,000.00 and made a payment regarding that indebtedness or Highway Solutions became indebted to Safety Guide for the $150,000.00 deposit (or some combination of both). Thus, by virtue of the fact that neither Safety Guide nor Highway Solutions has made any claim whatsoever within their respective bankruptcy petitions pertaining to this transaction, it has been, as a matter of law, ratified by either or both of them[9]. That ratification binds the determination here opposite the position being asserted by Whitney Bank. The transaction cannot, as a matter of law, be affirmed by the corporation for whose benefit the transaction was entered while simultaneously be treated by the outside world (in this case, a creditor) as ultra vires for which individual liability to Mills can attach. Those are inconsistent positions not permitted under Alabama law.

## II.     Estoppel.

32.     Mills contends that Whitney Bank is estopped from pursuing its claims against him.

33.     Estoppel is an equitable of doctrine that does not create a right or impose an obligation but prevents an otherwise unjust result. General American Life Insurance Company v. AmSouth Bank, 100 F.3d 893, 899 (11th Cir. 1996). The purpose of estoppels is to promote

---

[9]Section 7-3-405 provides that for employer's responsibility for a fraudulent endorsement by its employee

12

equity and justice in an individual case by preventing a party from asserting rights under a

general rule of law when its own conduct renders that assertion contrary to equity and good

conscious. Id. citing Williams v. F.N.B.C. Acceptance Corp., 419 So.2d 1363, 1367 (Ala 1982)

34.     The purpose of judicial estoppel is to protect the integrity of the judicial process

by prohibiting parties from deliberately changing positions according to the exigencies of the

moment. Walden v. Hutchinson, ___ So.2d ____ (Ala. 2007) Ms 1060516 Nov. 9, 2007. That

Doctrine also prevents parties from playing fast and loose with the courts and prevents the

system from being manipulated by chameleonic litigants. Id.

35.     Although Mills admits that this case presents an unusual fact scenario not cleanly

falling under the judicial estoppel rubric, the principles applicable thereunder are instructive if

not controlling here. Judicial estoppel has been successfully invoked against a litigant who took

inconsistent positions in prior divorce and bankruptcy proceedings  See First Alabama Bank,

883 So.2d 1236, 1244 (Ala. 2003). Clearly, Whitney Bank has alleged that several persons and

entities are responsible for the $150,000.00 indebtedness made the subject of this lawsuit.

36.     Additionally, a party will not be permitted to maintain inconsistent positions or to

take a position in regard to a matter that is directly contrary to or inconsistent with one

previously assumed by him where he had or was chargeable with full knowledge of the facts and

where another would be prejudiced by his action. Unim Life Insurance Company of America v.

Wright, 897 So.2d 1059, 1070 (Ala. 2004) (citations omitted). Here, the inconsistent positions of

Whitney Bank would be those taken as against Highway Solutions, Safety Guide and/or Mr. and

Mrs. Marcato. Additionally, there is inherent inconsistency in the unequivocal implicit adoption

of this transaction as that of a corporate nature within the bankruptcy filings of Safety Guide and

13

Highway Solutions while Whitney Bank purports to assert to this Court that the transaction was

ultra vires and one for which Mills should be individually liable.

37.    As to equitable estoppel, the Alabama Supreme Court has stated the following

applicable elements:

>    1.    The person against whom estoppel is asserted
>    usually must have knowledge of the facts and communicate
>    something in a misleading way with the intention that the
>    communication will be acted upon. This communication can be
>    either by words, conduct or silence;
>
>    2.    The person seeking to assert estoppel who lacks
>    knowledge of the facts relies upon the communication; and
>
>    3.    The person relying on the communication would
>    be harmed materially if the actor is later permitted to assert a
>    claim inconsistent with his earlier conduct or communication.

See Hale v. Hale, 878 So.2d 313, 321 (Ala. Civ. App. 2003). Here, Whitney Bank has

articulated its belief that Safety Guide, Highway Solutions and/or Mr. and Mrs. Marcato are

liable for the indebtedness at issue. Now finding those entities in bankruptcy, Whitney Bank

turns its focus on non-bankrupt Tom Mills. The determination as to whether Mills' actions are

or are not of a corporate nature is not for Whitney Bank to decide and/or prove. None of those

entities are pursuing Tom Mills for the liability Whitney Bank claims he owes.

38.    The type of estoppel being pursued by Mills is somewhat of a judicial and

equitable hybrid. The inconsistency of positions as between the Bankruptcy Court and this

District Court (as well as Judge DeMent's Court) creates a scenario for inequitable and

inconsistent determinations and outcomes. On the other hand, the inequitability of Whitney

Bank's "picking and choosing" based on whether the defendant has or has not filed a bankruptcy

petition should not be allowed. Mills recognizes that judicial estoppel looks to the connection

between the litigants and the judicial system while equitable estoppel focuses on the relationship

between the parties prior to the litigation. Ex parte First Alabama Bank, 883 So.2d 1236 (Ala. 2003). Thus, both of those estoppel doctrines appear to be applicable here.

39.     It is inequitable and inconsistent to assert to Judge DeMent in CV-07-415 that Whitney Bank wins against Highway Solutions "as a matter of law" for these identical claims and at the same time assert to this Court here that it is due recovery of the same indebtedness from Mr. Mills.

40.     Here, the proceeds from the Safety Guide check were deposited in their entirety into the Whitney Bank account of Highway Solutions. It is undisputed that Highway Solutions utilized the entirety of that deposit for its own benefit paying legitimate obligations. There is no allegation that Mills took any of the proceeds for his own use or made any inappropriate payments with the proceeds. Mills does not argue that Whitney Bank ratified the transaction; however, it is undisputed that the two business entities at issue did.

41.     There is no contention to the contrary that as comptroller/controller/treasurer, Mills had the authority to act, in some degree, in the financial interests of both Safety Guide and Highway Solutions. Thus, the contention and description of an "unauthorized transaction" is solely related to the signature on the check not the authority to conduct the transaction itself.[10] There is no claim in the Highway Solutions' bankruptcy filings that Safety Guide owes it money. There is no claim in Highway Solutions' bankruptcy filings that Tom Mills owes it money. There is no claim in the Safety Guide bankruptcy filings that Highway Solutions owes it money. There is no claim in the Safety Guide bankruptcy that Tom Mills owes it money. There is no

---

[10] Although the subject of a fact inquiry, assuming this Motion to Dismiss is not granted, the facts will show a myriad of transactions, many of which will be proven by Whitney Bank's own documents evidencing multiple payments back and forth between Safety Guide and Highway Solutions in the form of accounts payable and accounts receivable. Basically, the two businesses kept each other afloat for as long as was reasonably feasible When one business needed money, the other would provide it and vice versa.

claim in the Marcato bankruptcy that Tom Mills owes them money. None of these entities have asserted any position in their bankruptcy filings in any way suggestive of an unauthorized transaction for which Mills, the agent, should be liable to his principal

42.    It is axiomatic that the moral, ethical and legal requirement of prosecuting a bankruptcy filing in the United States District Court includes honest, faithful and accurate presentation to the Court of the bankrupt's assets and liabilities. If neither Highway Solutions nor Safety Guide claim under oath in the proper legal forum where such a claim would have to be presented that the transaction made the subject of this lawsuit is an unauthorized one that should be voided, how can Whitney Bank make such a contention in this litigation?

**III.    Fraud.**

43.    Whitney Bank has also sued Mills essentially arguing that the presentation of the $150,000.00 from the Safety Guide account for deposit into the Highway Solutions' Whitney Bank account constitutes fraud. However, where an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proven to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim. Bruce v. Cole, 854 So.2d 47 (Ala. 2003).

44.    Here, due to the ratification of the transaction by either or both of Safety Guide and Highway Solutions, there are obligations as between those two companies and additionally as between Whitney Bank and Highway Solutions. But, because there is no enforceable contract obligation based on the purposed "promise" or "representation" of Tom Mills to Whitney Bank, Whitney Bank's tort claim likewise fails.

16

45.    In short, there is either a valid and enforceable instrument or there is not. As stated in previous sections of this brief, Mills had no duty to anyone other than his principal. Whitney Bank as a creditor was not owed a duty by Tom Mills. The validity or lack thereof of the instrument in question is a matter of contractual duty between Whitney and Highway Solutions, between Safety Guide and Highway Solutions and between Safety Guide and its bank, Wachovia. Any duty Tom Mills owed would be to his principal at Safety Guide for writing the check and to his principal at Highway Solutions for depositing it.

46    The Statute of Frauds bars Whitney Bank's fraud claim against Mills. Whitney Bank's breach of contract action is available for it to pursue against Highway Solutions (as it has already attempted to do) now through the prosecution of that action in Highway Solutions' bankruptcy case. Again, it is clear from the track record of Whitney Bank's relationship with Highway Solutions that it did not care about the historical authorization of transactions until 1) Highway Solutions ran out of money and credit and 2) Highway Solutions, Safety Guide and Mr. and Mrs. Marcato filed bankruptcy. A mere failure to perform a contractual obligation is not a tort and it furnishes no foundation for an action on the case. Armstrong Business Services, Inc. v. AmSouth Bank, 817 So.2d 665, 681 (Ala. 2001) (citations omitted). In other words, Alabama law is long settled that a breach of a promise, outside a contract or a duty imposed by the common law, does not support a tort cause of action. Id.

47.    "Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is solvent or insolvent." Galactic at 339. (Citations omitted.)

**Conclusion**

17

As a matter of law, the conduct made the basis of Whitney Bank's claims against Tom

Mills has been ratified by Highway Solutions and/or Safety Guide. Thus, Whitney Bank's

claims fail. Alternatively, Whitney Bank's claims are barred by the doctrines of judicial and/or

equitable estoppel. Its fraud claims are inadequately plead and, even if adequately plead, do not

state a claim of fraud for which relief can be granted.

As an alternative to dismissing this action, Mills contends that it should be stayed

pending the outcome of the bankruptcy cases referenced herein.

<div style="margin-left:40%">

Respectfully Submitted,


/s/ Jack B. Hinton, Jr.
Jack B. Hinton, Jr. (HIN020)
Attorney for the Defendant Thomas J. Mills

</div>

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, AL  36103
(334) 834-9950


### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on the following by placing a
copy of same in the United States mail, postage prepaid and properly addressed this 17th of
December, 2007.

Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
P. O. Box 306
Birmingham, AL  35201-0306

<div style="text-align:center">18</div>

/s/ Jack B. Hinton, Jr.
Jack B. Hinton, Jr.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| WHITNEY NATIONAL BANK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:07-CV-414-MEF |
| ) | |
| THOMAS J. MILLS and SAFETY GUIDE ) | |
| OF ALABAMA, LLC. ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR LEAVE TO FILE
NOTICE OF CORRECTION**

Mindful of the letter and spirit of Rule 3.3 of the Alabama Rules of Professional

Conduct, the undersigned counsel for Thomas J. Mills moves this Honorable Court for

leave to file his correction of an inadvertent misstatement made in this Defendant's Brief

in Support of Motion to Dismiss (Doc. 37). In its brief, the undersigned on behalf of

Defendant Mills cited the case of CIT Financial Services, Inc. v. Bowler, 537 So.2d 4

(Ala. 1988). The undersigned erroneously argued that in CIT Financial, "the Alabama

Supreme Court held that the trial court erred in failing to instruct the jury on ratification."

Counsel for Whitney Bank respectfully but correctly pointed out that error in Plaintiff's

Brief in Response to the Motion to Dismiss, Page 10, note 5 (see Doc. 39).

After review and study of the research which the undersigned had conducted and

was utilizing at the writing of the brief, the only explanation that can be had is that the

undersigned simply erroneously dictated the conclusion of the CIT Financial case by

sheer error.

The undersigned acknowledges the ABA Model Rules of Professional Conduct and its requirement that a lawyer shall not knowingly fail to correct a false statement of law previously made to a tribunal by the lawyer. See e.g. Rules of Professional Conduct, 3.3(a)(1) "Candor Toward the Tribunal." It is in that spirit that the undersigned files this Motion for Leave to Amend.[1]

The undersigned mistakenly represented the holding in the <u>CIT Financial Services</u> case as <u>reversing</u> the trial court. In reality, the trial court was held to be correct in its decision to refuse the requested charge on ratification. But, the rationale for that affirmance was because the only claims submitted to the jury were negligence and wantonness. In other words, the logical implication of the holding in <u>CIT Financial</u> is that it would have been error for the trial court to refuse the ratification instruction had the case been other than negligence or wantonness. The undersigned failed to make the argument clear in his earlier filing in that there are no negligence and wantonness claims being pursued here; therefore, the holding in <u>CIT Financial</u> supports this Defendant's argument. The undersigned poorly and mistakenly articulated the reason for the application of the ruling in the <u>CIT Financial</u> case.

The undersigned respectfully requests that this Honorable Court 1) grant leave to amend Defendant Mills' previously filed Brief in Support of Motion to Dismiss in order that the assertion regarding the holding in the <u>CIT Financial</u> case be corrected[2] and 2) consider this Motion to be this Defendant's correction if and once leave is granted.

---

[1] It is likewise understood that Alabama's Rule 3.3 does not contain the specific language referenced herein pertaining to the affirmative duty to correct a false statement of law previously made. Nonetheless, the undersigned believes that the spirit of Alabama's Rules of Professional Conduct contemplate such a requirement and the undersigned gladly admits that obligation.

[2] The undersigned also commends the professional courtesy of opposing counsel in his respectful argument pointing out the undersigned's erroneous assertion.

2

Respectfully Submitted,

/s/ Jack B. Hinton, Jr.
Jack B. Hinton, Jr. (HIN020)
Attorney for the Defendant Thomas J. Mills

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, AL  36103
(334) 834-9950

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on the following by placing a copy of same in the United States mail, postage prepaid and properly addressed this _21st_ of January, 2008.

Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
P. O. Box 306
Birmingham, AL  35201-0306

/s/ Jack B. Hinton, Jr.
Jack B. Hinton, Jr.

3

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WHITNEY NATIONAL BANK, *et al.*,   )
          )
     Plaintiffs,   )
v.          )   CASE NO. 2:07-cv-414-MEF
          )
SAFETY GUIDE OF ALABAMA, LLC,   )
*et al.*,        )
          )
     Defendants.   )

## O R D E R

Upon consideration of the defendant's Motion to Amend/Correct (Doc. #40) filed

on January 21, 2008, it is hereby

ORDERED that the motion is GRANTED.

DONE this the 24th day of January, 2008.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

**Russell Elebash**

| | |
|---|---|
| **From:** | efile_notice@almd.uscourts.gov |
| **Sent:** | Thursday, January 24, 2008 3:35 PM |
| **To:** | almd_mailout@almd.uscourts.gov |
| **Subject:** | Activity in Case 2:07-cv-00414-MEF-WC Whitney National Bank v. Safety Guide of Alabama , LLC et al Order on Motion to Amend/Correct |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

## U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 1/24/2008 at 3:35 PM CST and filed on 1/24/2008

**Case Name:**    Whitney National Bank v. Safety Guide of Alabama , LLC et al

**Case Number:**    2:07-cv-414

**Filer:**

**Document Number:** 41

**Docket Text:**
ORDER granting [40] Motion to Amend/Correct. Signed by Judge Mark E. Fuller on 1/24/2008. (wcl, )

**2:07-cv-414 Notice has been electronically mailed to:**

Gregory Carl Cook    gcook@balch.com, cwicker@balch.com

Jack B. Hinton , Jr    dawn@ghhclaw.com, jay@ghhclaw.com, russell@ghhclaw.com

**2:07-cv-414 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document

**Original filename:**n/a

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1053018227 [Date=1/24/2008] [FileNumber=870688-0] [1b9c3e54680c1d8240847c97b0606c8ea0723f2cb291c4c07d31b82302e6d96e734b 78d55099ed8be4691bce860111bab7b580fc7f30190f9a6045428c5f56b5]]