IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:07-CV-414-MEF |
| ) | |
| THOMAS J. MILLS and SAFETY GUIDE ) | |
| OF ALABAMA, LLC. ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Comes now the defendant, Thomas J. Mills, by and through the undersigned counsel, and in support of its Motion for Summary Judgment filed contemporaneously herewith sets out this brief in support of Motion for Summary Judgment[1] and as grounds therefore states as follows:

Whitney Bank's First Amended Complaint generally claims that Tom Mills is liable for a $150,000.00 transaction between Safety Guide of Alabama, LLC ("Safety Guide") and Highway Solutions, LLC ("Highway Solutions"). Erroneously, in paragraph 6 of the First Amended complaint (Doc. 31), Whitney Bank contends that Highway Solutions and Safety Guide have "common management." As can be seen from the Affidavit of Tom Mills attached herewith, the two entities have different ownership, one managed by Michael C. Marcato and the other by Anne Marcato. (Mills' Affidavit ¶¶ 2, 3).

Aside from the above, the essential facts of the transaction made the subject of this lawsuit are undisputed. Mills admits the allegation that he was charged with various financial duties on behalf of both Highway Solutions and Safety Guide as his employers. (Id. ¶ 7).

---

[1] Mills' statement of pertinent facts and material history can also be found in his earlier-filed brief (Doc. 37), supporting his Motion to Dismiss. Mills again respectfully requests this Court take judicial notice of the bankruptcy filings in this District as urged heretofore.

1

Within those responsibilities, Mills admits that he would occasionally make financial transactions on behalf of and between those two companies. (Id. ¶ 9). Further, Mills admits that he, on March 12, 2007, as an agent, servant and employee of Safety Guide, executed Michael Marcato's name to a Safety Guide check in the amount of $150,000.00 made payable to Highway Solutions. Furthermore, Mills admits that Highway Solutions, in reliance on the sums from Safety Guide deposited into the Highway Solutions' Whitney Bank account wrote checks for a variety of its obligations all of which being legitimate (see generally Mills' Affidavit). Mills also admits to understanding that the $150,000.00 Safety Guide check was ultimately dishonored although Whitney Bank had already honored the many checks written by Highway Solutions depleting the deposited sums. Nonetheless, contrary to Whitney Bank's assertions, Mills is not liable under Section 6-5-285, Code of Alabama 1975 nor is he liable under Section 7-3-415. Additionally, Mills is not liable for fraud as against Whitney Bank.

## LIABILITIY FOR THE CHECK

It is undisputed that the actions of Defendant Mills made the subject of this suit were by and on behalf of his employers Highway Solutions, LLC ("Highway Solutions") and/or Safety Guide of Alabama, LLC ("Safety Guide"). As such, the liability for the $150,000.00 check at issue rests with its maker, Safety Guide. Defendant Mills has no individual liability for the legitimate corporate indebtedness between Safety Guide and Highway Solution.

As can be seen in the attached Affidavit of Mills, it was his responsibility to handle a wide array of financial responsibilities on behalf of both Safety Guide and Highway Solutions. Within those duties and responsibilities, it would be Mills' task from time to time to transfer funds back and forth between the corporations for which he was acting as controller/comptroller. In furtherance of his employer's business, there were times when payments were made to

vendors and subcontractors by Mills signing Mike Marcato's name to checks. Additionally, Mills and others would occasionally wire funds, transfer funds and make online payments to vendors on behalf of his employers. Further, Mills would execute documents necessary to transfer funds back and forth between Highway Solutions and Safety Guide. These actions heretofore have never been disavowed by either Safety Guide or Highway Solutions. Even still, there were instances (specifically those referenced by documents produced by Whitney Bank) where Mills personally signed his own name to at least two counter checks (Whitney SG 688 and 697) to initiate payment from Highway Solutions' Whitney Bank account to Whitney Bank itself.

Based on the history of this and other litigation instituted by Whitney Bank (see Mills' Brief in Support of Motion to Dismiss, Doc. 37), this action appears to be a result of Whitney Bank's frustration at contracting with a now insolvent customer. Attempting to stretch that frustration into an enforceable legal theory, Whitney Bank asserts that Tom Mills should have individual liability for his acts as the controller/comptroller of Safety Guide in issuing the check in question and for Highway Solutions in depositing it into the Whitney Bank checking account.

The concept that a corporation is a legal entity existing separate and apart from those who compose it is a well-settled rule in the State of Alabama. Co-X Plastics, Inc. v. Alapak, Inc., et al., 536 So.2d 37, 38 (Ala. 1988). In order to recover against an individual for the debts of a corporation, Alabama law holds that a plaintiff must show 1) that the individual agreed to be liable for the debts or 2) that the fact surrounding the transaction support a disregard for the corporate form. M&M Wholesale Florist, Inc. v. Emmons, 600 So.2d 998 (Ala. 1992). In Emmons, the Supreme Court affirmed summary judgment in a case where a vendor of an incorporated flower shop sought to recover from the individual operators of the business sums

due on an open account with the flower shop. The account was initially opened while the flower shop was a sole proprietorship. But, the flower shop later became a corporation. The entity seeking recovery was never informed of the subsequent incorporation. Nonetheless, the Alabama Supreme Court held that there was no evidence indicating that the individuals agreed to be personally liable for the indebtedness of the corporation. Thus, the Court held that the individuals could not be personally liable for the debts of the corporation. The Court declined to allow the creditor to "pierce the corporate veil" and disregard the corporate form.

Here, although not claiming to do so, Whitney Bank is attempting to pierce the corporate veil and hold Mills personally liable for legitimate corporate indebtednesses of Safety Guide and/or Highway Solutions. Because the concept of limited liability is one of the principal purposes for which the law of corporations was created, piercing the corporate veil is not a power that is lightly exercised. In re Coala, Inc., 182 D.R. 87 (Bankr. N.D. Ala. 1995). It is undisputed that the sums in question constituted a legitimate transaction between Safety Guide and Highway Solutions. Mills never agreed to be liable for them. It is also undisputed that the sums deposited in the Highway Solutions checking account at Whitney Bank were utilized to pay legitimate indebtednesses and/or obligations of Highway Solutions. The bankruptcy filings of both Safety Guide and Highway Solutions affirm as a matter of law that neither company is looking to the other for a reimbursement regarding the transaction at issue. It is neither an asset (account receivable) nor a liability (account payable). There has been no disregard for the corporate form.

As a matter of general corporate law in Alabama, he who seeks to have the corporate cloak set aside must either demonstrate fraud or show that the recognition of the corporate form

will return in injustice or inequitable consequences. Washburn v. Rabun, 487 So.2d 1361, 1365 (Ala. 1986).

In Force v. Age-Herald Company, 136 Ala. 271, 33 So. 866 (Ala. 1903), the Appellate Court dealt with whether a complaint over an indebtedness of a corporation was sufficient to allow the creditors to pursue an action against the individuals. The complainant in that case was a creditor of a corporation. The charge was that "the individual respondents, as directors or agents, participated in an ultra vires act of the corporation." There was no pretense of fraud nor was there a charge that the individuals received any benefit whatsoever from the act. The Supreme Court of Alabama ruled that because the individual defendants were acting in a fiduciary capacity as agents or trustees of the company, individual liability could not attach.

> "It is not pretended that the individual respondents diverted one share of this stock from such legitimate corporate purposes, or that any of them ever got a single share for his own benefit. Therefore the bill, as amended, cannot be maintained on the theory that the complainant has the right to follow assets of [the company] fraudulently diverted from the payment of its debts into the hands of the individual respondents, for it fails to show that any of such assets were received by them."

(Force, at 867).

> "A creditor cannot attack a corporate transaction on the ground that it is ultra vires merely, where no fraud is charged. This right is confined to the corporation itself, or, where it refuses to act, to the stockholder, or, in a proper case, to the state."

(Id.) The Supreme Court went on to hold that creditors are not entitled to disaffirm a transaction of the corporation made by agents of the corporation merely because the corporation itself or its stockholders could have made such a disaffirmance.

> "When the disposition of the property of a corporation is assailed by its creditors, they are not clothed with the right of the corporation or of its stockholders to set aside the transaction, regardless of its fairness or unfairness, on the ground that it was entered into by representatives of the corporation who had put themselves in a relation antagonistic to the interests of their principal.

5

> The right of the creditor to impeach the transaction depends on its fraudulent character. The question, in such case, was the transaction which is complained of entered into with the intent to hinder, delay, or defraud creditor? Was the property fraudulently transferred or conveyed?"

Force quoting O'Conner Mining Company v. Coosa Furnace Company, 95 Ala. 618 (Ala. 1891). Here, Whitney Bank seeks to disavow a transaction the corporations have avowed. It seeks to take action against Mills which, at best would be within the purview of those corporations. Mills' duty was to his employer, it is to his employer Whitney Bank must look for redress. Unfortunately, Whitney Bank knows that and Safety Guide and Highway Solutions are bankrupt.

Furthermore, none of the persons or entities receiving any of the proceeds of the $150,000.00 deposit is being asked through the bankruptcy trustee to return those sums as illegitimately paid. Such an affirmation of the transactions by the corporate form conclusively supports Mills' argument of ratification of his acts. It is inconsistent and even oxymoronic for the two corporate entities at issue to affirm the legitimacy of the transaction in question while the third party banking institution attempts to disaffirm it. The clear rationale underlying such an effort is the fact that Whitney Bank was content to operate in a banking relationship with Highway Solutions in a way entirely consistent with the transaction at issue so long as Highway Solutions maintained a sufficient amount of money in the bank or credit line access. The very documents produced by Whitney Bank as explained by Mills in his Affidavit show that time and again, he executed documents to move money from Safety Guide to Highway Solutions where immediately accessible sums were not available to honor the obligations referenced by the instrument. Nonetheless, consistent with its practices over the eleven months during which Whitney Bank dealt with Tom Mills as an agent of Highway Solutions and Safety Guide, Whitney Bank continued to honor Mills' instructions electronically, over the phone and on paper.

Contrary to the contentions made in this case, Whitney Bank even took at least two counter checks from Mills in person on behalf of Whitney Bank even though those checks bore Tom Mills' own signature "Tom Mills." Interestingly, both of those counter checks were drawn out of the Highway Solutions account with Whitney Bank and made payable to Whitney Bank. Again, clearly, so long as Whitney Bank was making money on the deal, it did not have a problem with the way Highway Solutions allowed Tom Mills to exercise financial authority on its behalf. Only when the money ran out did Whitney Bank cry "foul." Even then, it has sought to collect the $150,000.00 indebtedness from Safety Guide, Highway Solutions, Mr. Marcato, Mrs. Marcato and Tom Mills. The fact that he is the only non-bankrupt defendant in any of this litigation is the only reason he is being pursued. If Alabama Law holds that the only ground upon which officers and directors can be liable to creditors of a corporation is if they "fraudulently divert or destroy the corporate assets, which are subject to payment of corporate debts," (Jefferson Pilot Broadcasting Company v. Hilary & Hogan, Inc., 458 F. Supp. 310, 313 (M.D. Ala. 1978), how much more so should the corporate form and the past dealings between Highway Solutions and Whitney Bank insulate Mills from these claims?

At best, Whitney Bank's complaint (and all undisputed facts taken into account) show that Mills may have made a "mere negligent or ultra vires act." Force v. Age-Herald Company, 136 Ala. 271, 33 So. 866 (Ala. 1903). This best-case scenario is distinct from a fraudulent transfer or a misapplication of corporate assets to personal use. Here, the transaction at issue was not unlike many others that had gone before it -- transactions which Whitney Bank happily honored -- all instituted by Tom Mills on behalf of Highway Solutions and/or Safety Guide. As clearly evidenced by the Mills' Affidavit, everyone involved knew and had every intention of having a deposit in hand to cover the $150,000.00 check at issue in a timely way consistent with

past dealings with Whitney Bank. Accordingly, not only has Mills' activity in this matter been ratified by Highway Solutions and Safety Guide, Whitney Bank is estopped by its own behavior from pursuing the assertions it now makes. In the vernacular, it simply does not pass the sniff test for Whitney Bank to systematically deal with Tom Mills as a financial agent on behalf of Whitney Bank's customer only to now disavow his authority when it seeks to collect from him on a bad business deal with Highway Solutions.

As stated in Mills' Brief in Support of Motion to Dismiss (Doc. 37), a corporation can subsequently ratify whatever it could in the first instance have lawfully authorized. See e.g. Hall & Farley v. Alabama Terminal & Improvement Company, et al., 173 Ala. 398, 56 So. 235, 244 (Ala. 1911). Surely, Safety Guide could have written a check to Highway Solutions signed by Mr. or Mrs. Marcato. That would have been lawfully authorized. Tom Mills did the same and that transaction was authorized by past dealings, estoppel and ratification. Here, there is absolutely no dispute that the liability for the $150,000.00 check from Safety Guide to Highway Solutions is that of Safety Guide. Safety Guide made the promise to pay Highway Solutions and, in accordance with the undisputed testimony of the Tom Mills' Affidavit, Mills and Safety Guide had every intention of the $150,000.00 transaction being good relying on the clear and unequivocal past historical practices as between these companies and Whitney Bank. Again, but for the bankruptcy filings referenced above, this transaction would be one in a long string of transactions in the regular course of dealing between these players.

But for the Depositor Agreement and the obligations arising thereunder, could Whitney Bank pursue Michael Marcato for this transaction just because the deal did not go as planned? One thinks not. Sure, Michael Marcato is an individual guarantor on the obligations of both Highway Solutions and Safety Guide. But, Tom Mills is not. Because Mills' signature on the

8

transaction at issue was ratified, it was just as if it was made by Michael Marcato. Michael Marcato is no more individually liable for the debts of the corporation (as a matter of law) than is Tom Mills. His individual guarantee is another matter.

The long and short of this case is pretty simple. Safety Guide wrote a check to Highway Solutions without enough money in its account -- a transaction that it had done often before. Whitney Bank never had a problem with it even though those prior transactions were instituted by and/or participated in by Tom Mills. Upon the gauntlet of bankruptcy being thrown down, Mills became the obvious but not so easy target to collect a small portion of Whitney Bank's large debit balance from the difficult financial predicament of its customer Highway Solutions.

## **FRAUD**

As to Whitney Bank's claim of fraud, as set out in Mills' Brief in Support of his Motion to Dismiss, there is simply no evidence of fraud. Fraud must be pled with specificity and, to the extent Whitney Bank's First Amended Complaint satisfies that requirement, Mills' Affidavit clearly shows the context within which the transaction was instituted. That context, as a matter of law, shows that the requisite intent is lacking and based on the past dealings of the parties, there is not substantial evidence of the material elements of Whitney Bank's fraud cause of action to allow it to survive. Clearly, no one intended that the Safety Guide check be worthless once the transaction was said and done.

Assuming without conceding that Whitney Bank's fraud action meets the necessary elements to survive summary judgment on its face, summary judgment is still appropriate on Tom Mills' waiver and/or estoppel argument. Based on the content of the Mills' Affidavit and arguments made throughout this brief and other supporting documentation, Whitney Bank regularly and systematically dealt with Tom Mills as the agent of both Safety Guide and

Highway Solutions for pertinent transactions especially financial ones. They understood his agency relationship and acted consistent therewith. None of the historic dealings with Whitney Bank and Tom Mills are at issue but the one $150,000.00 transaction made the subject of this case. But, it is inequitable for Whitney Bank to conduct business with Highway Solutions through Tom Mills for months on end without any question of his authority. Then, when the companies for which he worked ran out of money, all of a sudden, the transactions which were previously garden variety corporate customer exchanges now become, according to Whitney Bank, the individual liability of Tom Mills. Either all of the transactions Tom Mills handled on behalf of Highway Solutions are legitimate or none of them are.

## STAY

In addition to requesting that this Court dismiss this action against him, Mills also asserts that this Court should exercise its equitable powers to stay this action due to the nature of the underlying bankruptcy filings of Safety Guide, Highway Solutions, Mr. Marcato and Mrs. Marcato. Although Mills acknowledges that the automatic stay applicable in Chapter XI bankruptcy settings generally applies to the commencement or continuation of an action against the debtor, (see In re Stewart, 329 Bankr. 910 (Bankr. M.D. Ga. 2005)) there are exceptions to that general rule. In Stewart, supra, although a Chapter VII case, the Bankruptcy Court in the Middle District of Georgia was asked to consider whether the automatic stay should be applied to not only the debtor but the debtor's sons and wife[2]. It is admitted that the extension of an automatic stay to a debtor's co-defendants is only proper in unusual circumstances (see In re Stewart). However, where there is such identify between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against or a finding against the debtor, the

---

[2] The debtor initially filed a Chapter XI Petition which was converted to a Chapter VII case.

stay should be applied. In re Stewart citing Reliant Energy Services, Inc. v. Enron Canada Corp. 349 F.3d 816, 825 (5th Cir. 2003).

Here, for Whitney Bank's claim to survive and have any merit at all, there has to be an indebtedness or liability claimed between Highway Solutions and Safety Guide. This Honorable Court's assessment and determination regarding whether Mills' transaction was or was not ratified by the corporation or corporations at issue would have a direct bearing on the three bankruptcy filings referenced herein. Whether Tom Mills can be personally liable for what he contends to be this corporate indebtedness requires this Court to make a decision that would presently conflict with the state of the Bankruptcy Court filings. Also, this Court's determination could stand to adjudicate inopposite results. If there is an alter ego theory to be pursued against Mills, that should be within the province of the Bankruptcy Court. This Court's determination on Mills' defenses would determine whether the indebtedness alleged by Whitney Bank (and asserted in earlier pleadings against Safety Guide and Highway Solutions) is an obligation of either or both of those estates.

Here, the extraordinary circumstances of this case compel this Court to dismiss it at the Motion to Dismiss stage or, pursuant to this Defendant's Motion for Summary Judgment. Alternatively, these extraordinary circumstances compel a stay of this action pending the outcome of the three bankruptcy petitions at issue.

Respectfully Submitted,

_____
Jack B. Hinton, Jr. (HIN020)
Attorney for the Defendant Thomas J. Mills

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, AL  36103
(334) 834-9950


## CERTIFICATE OF SERVICE

  I hereby certify that the above and foregoing was served on the following by placing a copy of same in the United States mail, postage prepaid and properly addressed this 8th of February, 2008.


Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
P. O. Box 306
Birmingham, AL  35201-0306

_____
Jack B. Hinton, Jr.