**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:07-CV-414-MEF |
| | ) | |
| SAFETY GUIDE OF ALABAMA LLC | ) | |
| and THOMAS J. MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF AND RESPONSE OF WHITNEY NATIONAL BANK
TO THE MOTION FOR SUMMARY JUDGMENT**

Plaintiff Whitney National Bank ("Whitney Bank") responds as follows to the Motion for Summary Judgment (the "Motion") [*Docket No. 44*] and the Brief in Support of Motion for Summary Judgment (the "Brief") [*Docket No. 45*] filed by Defendant Thomas J. Mills ("Mills"). In support thereof, Whitney Bank further relies upon the affidavit of Louis Dubos which is attached to Whitney Bank's Motion for Summary Judgment as **Exhibit "A"** [*Docket No. 42*] (the "Dubose Affidavit") and respectfully represents as follows:

**SUMMARY OF THE ARGUMENT**

This is a lawsuit for damages resulting from a check in the amount of $150,000 (as more particularly defined below, the "Check") issued on the checking account of Safety Guide of Alabama, LLC ("Safety Guide"), honored by Whitney Bank, and later dishonored by Safety Guide's bank. Under Alabama law, Mills is liable to Whitney Bank for the Check if he (i) delivered the Check, (ii) indorsed the Check, and/or if he (iii) committed fraud or suppression by assuring Whitney Bank that the Check would be honored.

Inexplicably, in the Brief and in his supporting affidavit attached to the Brief (the "Affidavit"), Mills admits committing each and every act necessary to prove Whitney Bank's

claims asserted against him.[1]  Because there are no disputed facts remaining, Whitney Bank respectfully requests that this Court enter an Order (i) denying the Motion, and (ii) granting Whitney Bank's Motion for Summary Judgment as to Defendant Thomas Mills on Counts II[2] and III[3] ("Whitney Bank's Motion").  [*Docket No. 42.*]

## BRIEF STATEMENT OF UNDISPUTED FACTS

1.    Safety Guide is an Alabama limited liability company managed by Michael Marcato with its principal place of business in Montgomery, Alabama.  [Brief, p. 1; Mills Aff., ¶ 2-3.]

2.    Highway Solutions, LLC ("Highway Solutions") is an Alabama limited liability company managed by Anne Marcato with its principal place of business in Montgomery Alabama.  [Brief, p. 1; Mills Aff., ¶ 2-3.]

3.    Michael Marcato and Anne Marcato (together, the "Marcatos") are husband and wife.  [Brief, p. 1; Mills Aff., ¶ 2-3.]

4.    From approximately April 2006 to April 2007, Mills was employed by both Safety Guide and Highway Solutions, simultaneously, as a comptroller and treasurer, and was responsible for the financial duties of both entities.  [Brief, p. 1; Mills Aff., ¶ 1.]

5.    On January 7, 2005, Highway Solutions executed and delivered to Whitney Bank a depositor account agreement (the "Depositor Agreement") and opened a checking account with Whitney Bank (the "Account") at Whitney Bank's Montgomery, Alabama branch (the

---

[1] As further described herein, Mills explicitly admits committing each act necessary to prove Whitney Bank's claims against him under section 6-5-285 of the Alabama Code and the claim against Mills for fraud.  The only fact not explicitly admitted or denied by Mills is whether he indorsed the Check, which would prove he is also liable under section 7-3-415 of the Alabama Code.  However, Mills states in his Brief that aside from the issue of whether Safety Guide and Highway Solutions, LLC have "common management", "the essential facts of the transaction made the subject of this lawsuit are undisputed."  [Brief, p. 1.]  In addition, as evidenced by the Dubose Affidavit, Mills has previously indicated to Louis Dubose that he did indorse the Check.  [Dubose Aff., ¶ 8.]

[2] The claim against Mills under Alabama Code § 6-5-285.

[3] The claim against Mills under Alabama Code § 7-3-415.

2

"Montgomery Branch").  [Dubos Aff. ¶ 2.]  A true and correct copy of the Depositor Agreement

and statements for the Account for the year 2007 are attached collectively as **Exhibit "1"** to the

Dubose Affidavit.

6.    On March 12, 2007, Mills delivered the Check to Highway Solutions.  [Brief, p.

1;[4] Dubose Aff., ¶ 8.]

7.    On March 12, 2007, Mills indorsed and deposited the Check to the Account.

[Dubose Aff., ¶ 8.]

8.    Mills knew that funds were not available to cover the Check and also knew that

the Check would be dishonored at the time he (i) delivered the Check to Highway Solutions, and

(iii) indorsed and deposited the Check to the Account.  [Mills Aff., ¶ 11.]

9.    Mills delivered the Check to Highway Solutions, and indorsed and deposited the

Check to the Account, despite knowing it would not be honored, because funds were needed in

the Account.  [Dubose Aff. ¶ 8.]

10.    After the Check was deposited, the Account was credited for $150,000, the

amount of the Check.  Whitney Bank subsequently honored checks and other debits presented to

the Account.  [Brief, p. 2; Dubose Aff., ¶ 4.]

11.    The Check was subsequently dishonored by Safety Guide's bank.  [Brief, p. 2;

Mills Aff., ¶ 11; Dubose Aff., ¶ 5.]  Whitney Bank received the Check from the Federal Reserve

[Dubose Aff., ¶ 5.]  Copies of the Check are attached collectively as **Exhibit "2"** to the Dubose

Affidavit.

---

[4] "Aside from the above [disputing Whitney Bank's statement that Safety Guide and Highway Solutions
have "common management"], the essential facts of the transaction made the subject of this lawsuit are undisputed."
[Brief, p. 1.]

12.     Before midnight of the next banking day following the banking day on which Whitney Bank received notice of the Check's dishonor, Whitney Bank notified Mills of the Check's dishonor and also mailed notice to Highway Solutions.  [Dubos Aff. ¶ 6.]

13.     As a result of the checks and other debits that were posted to the Account and paid by Whitney Bank after the Check's deposit, the subsequent dishonor of the Check caused the Account to be overdrawn in the amount of $150,815.23.  [Brief, p. 2; Dubose Aff., ¶ 7.]

14.     As a result of the delivery, indorsement, deposit and dishonor of the Check, Whitney Bank has suffered damages in the amount of $149,699.23, plus costs of collection, including, without limitation, attorneys' fees.  Costs of collection, including, without limitation, attorneys' fees, continue to accrue.  [Dubose Aff., ¶ 7, 9.]

15.     On May 11, 2007, Whitney Bank filed its complaint, commencing the instant lawsuit against Safety Guide and Mills (the "Complaint") seeking, without limitation, damages caused as a result of the Check that was deposited with Whitney Bank and later dishonored by Safety Guide's bank.  [*Docket No. 1.*]

16.     Also on May 11, 2007, Whitney Bank filed its complaint against Highway Solutions and the Marcatos in the United States District Court for the Middle District of Alabama, Northern Division, seeking, without limitation, damages caused as a result of the overdrawn Account, Highway Solutions' breach of multiple promissory notes it executed in favor of Whitney Bank, and amounts owed to Whitney Bank by the Marcatos pursuant to commercial guaranties executed by the Marcatos.  *Whitney Nat'l Bank v. Highway Solutions, et al* (Case No. 2:07-cv-00415-ID-TFM), *Docket No. 1.*

17.     On June 10, 2007, the Marcatos filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama.  *In re Marcato* (Case No. 07-30824-WRS), *Docket No. 1.*

18.    On July 12, 2007, Safety Guide filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama.  *In re Safety Guide of Alabama, LLC* (Case No. 07-30976-WRS), *Docket No. 1.*

19.    On September 26, 2007, Highway Solutions filed for bankruptcy in the United States District Court for the Middle District of Alabama.  *In re Highway Solutions, LLC* (Case No. 07-31461-WRS), *Docket No. 1.*

20.    On October 30, 2007, Whitney Bank filed its amended complaint in the instant lawsuit (the "Amended Complaint").  [*Docket No. 31.*]

21.    On November 11, 2007, Mills filed his Motion to Dismiss or in the Alternative, Motion to Stay First Amended Complaint (the "Motion to Dismiss").  [*Docket No. 34.*]

22.    On December 17, 2007, Mills field his Brief in Support of the Motion to Dismiss. [*Docket No. 37.*]

23.    On January 4, 2007, Whitney Bank filed its Brief and Response to the Motion to Dismiss ("Whitney Bank's Response").  [*Docket No. 39.*]

24.    On January 28, 2008, Whitney Bank filed its Motion for Summary Judgment as to Mills on Counts II and III of the Amended Complaint ("Whitney Bank's Motion").  [*Docket No. 42.*]

25.    On February 8, 2008, Mills filed his Motion for Summary Judgment (the "Motion") [*Docket No. 44*] and his Brief in Support of Motion for Summary Judgment (the "Brief").  [*Docket No. 45.*]

26.    In his Brief, Mills admits that, aside from whether Safety Guide and Highway Solutions have "common management", "the essential facts of the transaction made the subject of this lawsuit are undisputed."  [Brief, p. 1.]

27. Based on the evidence and admissions contained in the Brief, the Affidavit filed contemporaneously with the Brief, as well as the evidence contained in the Dubose Affidavit attached to Whitney Bank's Motion, no material facts are in dispute.

## STANDARD OF REVIEW

As the United States Supreme Court has explained:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting FED. R. CIV. P. 56(c)). Once the moving party has met its burden, Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c)).

The United States District Court for the Middle District of Alabama has explained that "[t]o avoid summary judgment, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Pioneer Servs., Inc. v. Auto-Owners Ins. Co., Inc.*, No. 2:06-cv-377-WKW, 2007 WL 2059109, at *4 (M.D. Ala. July 12, 2007) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "After the nonmoving party has responded to the motion for summary judgment, the court must grant

summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

An issue is "material" if it is a legal element of a claim under applicable substantive law that might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646.

In the case at hand, because no material facts are in dispute, Whitney Bank respectfully requests this Court to (i) deny the Motion and (ii) grant Whitney Bank's Motion.

## LEGAL ARGUMENT

I.    **MILLS IS LIABLE TO WHITNEY BANK FOR THE CHECK AND NO MATERIAL FACTS ARE IN DISPUTE**

In the Brief and Affidavit, Mills admits each and every act that Whitney Bank must prove in order to prevail in this lawsuit against him.[5] Because no disputed facts remain for this Court to determine, the Motion should be denied and Whitney Bank's Motion should be granted.

A.    **By his own admissions, Mills is liable to Whitney Bank for the Check under section 6-5-285 of the Alabama Code**

Mills admits violating the Alabama Civil Worthless Check Act, section 6-5-285 of the Alabama Code (the "Worthless Check Act"). Under the Worthless Check Act, Mills is liable to Whitney Bank for the Check because he unlawfully delivered the Check. The Brief and the Affidavit proves the required elements of the Worthless Check Act, which states:

> The holder of a worthless check . . . shall have a right of action against the person who unlawfully made, uttered or delivered the same to him or to his endorser; . . . though there has been no [criminal] prosecution . . . of the defendant for his unlawful act. . . . The plaintiff in such action may recover such damages, both

---

[5] As noted in the Summary of the Argument Section above, Mills explicitly admits committing each act necessary to prove Whitney Bank's claims against him under section 6-5-285 of the Alabama Code and the claim against Mills for fraud.

> punitive and compensatory, including a reasonable attorney fee, as
> the jury or court trying the case may assess.

ALA. CODE § 6-5-285.

Whitney Bank is the "holder" of the Check because the Check is a negotiable instrument, indorsed in blank, and Whitney Bank is in possession of it. *See* ALA. CODE §§ 7-1-201(b)(21); 7-3-204(a); 7-3-205(a).[6] Therefore, under the Worthless Check Act, Whitney Bank has a right of action against the person who unlawfully made, uttered or delivered[7] the Check to Whitney Bank or its indorser. ALA. CODE § 6-5-285.

As stated in the Brief and Affidavit, Mills delivered the Check, knowing the Check would not be honored. [Mills Aff., ¶ 11.] In addition, Mills delivered the Check, despite knowing it would not be honored, because money was needed in the Account. [Dubose Aff., ¶ 8.] Further, because Mills delivered the Check in order to place funds in the Account, knowing the Check would not be honored, Mills had the requisite intent to defraud Whitney Bank at the time he delivered and deposited the Check.[8]

Mills' violation of the Worthless Check Act proximately caused Whitney Bank to suffer damages in the amount of $149,699.23, plus costs of collection, including, without limitation, attorneys' fees. Costs of collection, including, without limitation, attorneys' fees, continue to accrue. [Dubos Aff., ¶ 7, 9.] Under the Worthless Check Act, Whitney Bank is entitled to recover compensatory damages, punitive damages and attorneys' fees, as this Court deems proper. *See Evans v. Roy Martin Constr., Inc.*, 429 So. 2d 1098, 1100 (Ala. 1983).

---

[6] Section 7-3-204(a) of the Alabama Code states that "[i]ndorsement" includes a signature restricting payment of the instrument. In the case at hand, the Check was indorsed with the restriction "for deposit only". *See* Exhibit "2" of the Dubose Affidavit. Under section 7-2-206(c) of the Alabama Code, because Whitney Bank is the depository bank that accepted the Check for deposit, Whitney Bank is the "holder" of the Check.

[7] Under the Alabama Code, "'Delivery,' with respect to an instrument . . . means voluntary transfer of possession." ALA. CODE § 7-1-201(b)(15).

[8] The Alabama Supreme Court has interpreted the word "unlawfully" in the Alabama Worthless Check Act as requiring intent to defraud. *Smith v. S.E. Fin. Corp.*, 337 So. 2d 330, 333 (Ala. 1976) (deciding a certified question by the Fifth Circuit Court of Appeals). "'Intent to defraud' requires a scheme to unfairly deprive someone of something of value." *Id.*

As evidenced by the relevant pleadings and exhibits, the Motion should be denied, and Whitney Bank is entitled to judgment as a matter of law for the damages it suffered as a result of Mills (i) delivering the Check, (ii) with the intent to defraud Whitney Bank, (iii) knowing that the Check would not be honored.  The compensatory damages of $149,699.23 are certain and the material facts are undisputed.

### B.    Mills is liable for the Check under section 7-3-415 of the Alabama Code

If an instrument is dishonored, section 7-3-415 of the Alabama Code requires an indorser[9] to pay the amount due on the instrument, according to the terms of the instrument at the time it was indorsed, to the person entitled to enforce it.  Therefore, because Mills indorsed the Check,[10] he is required to pay the amount due on that instrument, to the person entitled to enforce it.  ALA. CODE §7-4-415.

As explained to this Court in Whitney Bank's Motion and as evidenced in the Dubose Affidavit, Whitney Bank is entitled to enforce the instrument against Mills because (i) Whitney Bank is the holder, (ii) Whitney Bank gave proper notice of the instrument's dishonor, and (iii) Mills is the indorser.  [Whitney Bank's Motion, p. 6-8, *Docket No. 42.*]

Other than the issue of whether Safety Guide and Highway Solutions have "common management", Mills admits the essential facts of this transaction are undisputed.  At a minimum, therefore, this Court should deny the Motion.  In addition, based upon the evidence offered by Whitney Bank and the lack of evidence offered by Mills, Whitney Bank further requests that this Court grant Whitney Bank's Motion.

---

[9] "'Indorser' means a person who makes an indorsement." ALA. CODE § 7-3-204(b).

[10] Dubos Aff., ¶ 8.

### C.    Mills is liable for his tortious acts, even if Safety Guide and/or Highway Solutions ratified those acts

In the Brief, Mills argues that his tortious acts were ratified by Highway Solutions. "Here, Whitney Bank seeks to disavow a transaction the corporations have avowed. . . . Such an affirmation of the transactions by the corporate form conclusively supports Mills' argument of ratification of his acts." [Brief, p. 6.] Mills asserts that because his tortious acts were ratified, the damages suffered by Whitney Bank became a corporate debt. Therefore, according to Mills, (i) he is not liable for the tortious acts he admits committing, and (ii) any action by Whitney Bank against Mills for those tortious acts is a disguised attempt to pierce the corporate veil of Highway Solutions and/or Safety Guide.

This argument is nonsensical. First, Mills offers no proof that Highway Solutions and/or Safety Guide ratified his torts — Mills merely asserts this. [*Id.*] Neither entity has ratified Mills' actions. To the contrary, Highway Solutions has argued that the Check was forged. Highway Solutions did not list in its bankruptcy schedules any unsecured debt owed to Whitney Bank as a result of the overdrawn Account. When asked during the 341 Meeting of Creditors why the Account was omitted from the bankruptcy schedules, Anne Marcato (the managing member of Highway Solutions) responded that the Account was overdrawn due to a "**check that was a forged document**" which Highway Solutions disputed.[11] The assertion that Mills' conduct has been ratified is unsupported.

Second, assuming (for illustrative purposes only) that Highway Solutions and/or Safety Guide did ratify Mills' tortious actions, it is well-settled law that ratification of a tort merely establishes joint liability, rather than relieving the tortfeasor of individual liability.[12] As the

---

[11] *In re Highway Solutions, LLC*, Transcript of 341 Meeting of Creditors, p. 32, attached as Exhibit "A" to Whitney Bank's Response to the Motion to Dismiss [*Docket No. 39*] (emphasis added).

[12] Mills states that "a corporation can subsequently ratify whatever it could in the first instance have lawfully authorized." [Brief, p. 8 (citing *Hall & Farley v. Ala. Terminal & Improvement Co.*, 56 So. 235, 244 (Ala.

Alabama Supreme Court has explained, "[w]hen a person commits a tort" he cannot "escape individual liability on the ground that he was acting in an official corporate capacity." *Inter-Connect, Inc. v. Gross*, 644 So. 2d 867, 869 (Ala. 1994). As early as 1928, the Alabama Supreme Court stated: "It is a well-settled proposition that all who participate in a wrong or tort, whether principal or agent, are equally guilty and liable to the party injured." *Tenn. Chem. Co. v. Cheatham*, 116 So. 420, 423 (Ala. 1923); *see also Rudisill Soil Pipe Co. v. Eastham Soil Pipe & Foundry Co.*, 97 So. 219 (Ala. 1923) (explaining that directors who participate in a tort perpetrated through the agency of a corporation or a fraudulent injury of another will be civilly liable). "'The fact that the circumstances are such as to render the corporation liable is altogether immaterial . . . . Corporate officers are liable for their torts, although committed when acting officially.'" *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983) (quoting FLETCHER'S CYCLOPEDIA OF CORPORATIONS, § 1135, at 202-03 (1975)).[13]

The cases cited by Mills do not refute the proposition that corporate officers are personally liable for their torts. [Brief, p. 5-7.] *Force v. Age-Herald Co.* simply held that absent evidence of fraud, a corporate creditor could not hold corporate officers responsible for ultra vires acts which left the corporation insolvent. *Force v. Age-Herald Co.*, 33 So. 866 (Ala. 1903). Similarly, *Jefferson Pilot Broadcasting Co. v. Hillary & Hogan, Inc.* held that corporate officers and directors are not personally liable to the corporation's creditors unless they fraudulently divert or destroy corporate assets, leaving the corporation unable to pay its debts. *Jefferson Pilot*

---

1911) (holding that a corporation ratified a transfer of stock)]. However, as the caselaw above explains, ratification of a tort merely establishes joint liability with the tortfeasor.

[13] There are other decisions following the well settled rule that torts committed by corporate officers and employees are personally liable. *See Consol. Constr. Co. of Ala. v. Metal Bldg. Components*, L.P., 961 So. 2d 820, 824 (Ala. 2007) (explaining that the position or status of a corporate officer will not shield a defendant from individual liability in tort for their own actions); *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001) (holding that a corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort, is personally liable for the tort); *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999) (recognizing that a corporate president who makes false statements regarding completion of a contract to sell boat engines and generators to the plaintiff is personally liable for the fraudulent acts and omissions he personally commits in his capacity as a corporate officer).

*Broad. Co. v. Hillary & Hogan, Inc.*, 458 F. Supp. 310, 313 (M.D. Ala. 1978) (quoting and citing

cases). *Force* and *Jefferson Pilot Broadcasting* are inapplicable to instant case, in which Mills

admits committing intentional torts.[14]

Alabama law is clear that Mills is liable for the torts he committed, even if he was acting

in an official corporate capacity. Mills cannot discharge his liability with bare assertions that the

resulting damages are a corporate debt. This Court should therefore deny the Motion and grant

Whitney Bank's Motion.

### D.    Mills was sued for his tortious acts prior to any of the bankruptcy filings by the Marcatos, Highway Solutions or Safety Guide

The Motion repeatedly states that Mills became a "target" only after the bankruptcy

filings of the Marcatos, Highway Solutions and Safety Guide.[15] These statements are wrong. It

is a matter of public record — in the records of this Court — that Mills was sued prior to the

bankruptcy filings of the Marcatos, Highway Solutions or Safety Guide.

## II.    MILLS IS LIABLE TO WHITNEY BANK FOR FRAUD AND NO MATERIAL FACTS ARE IN DISPUTE

In the Amended Complaint, Whitney Bank alleged it was proximately damaged as a

result of its reasonable reliance upon the false statements, suppressions and omissions made by

---

[14] The remaining cases cited by Mills regarding the concept of piercing the corporate veil are also inapplicable because Whitney Bank is not seeking to collect a corporate debt but rather, to recover damages it suffered as a result of the intentional torts Mills admits committing. [Brief, p. 3-5.] *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So. 2d 37 (Ala. 1988) (affirming denial of supplier's post-judgment request to recover individually from a sole stockholder and director of a packaging business for an overdue account); *M & M Wholesale Florist, Inc. v. Emmons*, 600 So. 2d 998 (Ala. 1992) (affirming summary judgment against a supplier seeking to recover on an overdue flower shop's account from its corporate owners); *In re Coala, Inc.*, 182 B.R. 887, 892 (Bankr. N.D. Ala. 1995) (rejecting a peculiar argument raised by former employees of the debtor, who opposed the return of sewing machines leased by the debtor; the court explained "[t]he doctrine of piercing the corporate veil has historically been proposed by creditors of a corporation . . . to obtain satisfaction of the corporation's obligations from the stockholders' assets"); *Washburn v. Rabun*, 487 So. 2d 1361, 1365-66 (Ala. 1986) (holding that absent fraud, inequity, or some personal guaranty, "[a]n insurance company which contracts to do business with a properly incorporated insurance agency must look to the corporate entity to recover premiums allegedly owed by the agency," and not to the sole stockholder and employee of the agency). None of these cases refute the proposition that corporate officers, directors and employees are personally liable for their intentional torts.

[15] "The fact that he [Mills] is the only non-bankrupt defendant in any of this litigation is the only reason he is being pursued." [Brief, p. 7.] "Upon the gauntlet of bankruptcy being thrown down, Mills became the obvious but not so easy target . . . ." [*Id.* at p. 9.]

Mills.  Specifically, Whitney Bank asserted that Mills knowingly (or in the alternative, with wanton, reckless, negligent or innocent intent) (i) made a false representation, (among other things) assuring Whitney Bank that the Check would be honored (and/or fraudulently making such check), (ii) concerning a material existing fact, (iii) upon which Whitney Bank reasonably relied, and (iv) as a proximate result, Whitney Bank was damaged.  In addition, the Amended Complaint alleged that Whitney Bank was proximately damaged as a result of the suppression by Mills of the material facts regarding the Check.  Mills had a duty to disclose those material facts because of earlier statements made by Mills, the relationship of the parties and the particular circumstances.[16]

In the Brief and Affidavit, Mills admits (among other things) that he:

1.    Delivered the Check, knowing that sufficient funds were not available to cover the Check [Mills Aff. at ¶ 11]; and

2.    Understood that Whitney Bank, relying on the Check, honored the many checks written by Highway Solutions, causing the Account to become overdrawn in excess of $150,000.  [Brief at p. 2.]

"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  ALA. CODE § 6-5-101; *see also Money v. Willings Detroit Diesel, Inc.*, 551 So. 2d 926, 927 (Ala. 1989).  At a minimum, the facts admitted by Mills establish that: (i) Mills made a misrepresentation of a material fact (specifically, that the

---

[16] Mills asserted in his Brief in Support of Motion to Dismiss that he "had no duty to anyone other than his principal."  [Brief in Support of Motion to Dismiss, ¶ 45, *Docket No. 27*.]  This is, of course, untrue.  He had a duty (among many others) not to make misrepresentations and not to indorse or deposit checks he knew were not good.  Alabama cases hold that a partial disclosure or half-truth creates a duty to disclose completely.  Otherwise, the concealment or suppression of the selected facts induces the other party to act contrary to his interest.  *Am. Bonding Co. of Baltimore v. Fourth Nat'l Bank*, 91 So. 480, 483 (Ala. 1921); *Nobility Homes, Inc. v. Ballentine*, 386 So. 2d 727, 732 (Ala. 1980) (Jones, J., concurring in each part of the majority opinion except the reversing of the punitive damages) (citing *American Bonding Co.* with approval).

Check would be honored); (ii) Mills acted willfully to deceive, recklessly without knowledge, or by mistake and innocently (because he admits knowing that sufficient funds were not available to cover the Check at the time he made the misrepresentation); and that (iii) Whitney Bank acted on the misrepresentations, causing it to suffer damages in the amount of $150,000.

The fact that Mills hoped to receive a future payment sufficient to cover the Check is not a defense to fraud or the other torts asserted in this lawsuit.[17]  Simply stating "at no time did I intend to defraud Whitney Bank" is not a defense to indorsing and depositing a check with the knowledge that the check will be dishonored.  [Mills Aff. ¶ 14.]  Contending that the same torts were previously committed is also not a defense to the torts asserted in this lawsuit.[18]  [Brief at p. 8.] This argument is without merit and is not a defense to the torts Mills admits committing.

Based on the foregoing, as well as the fact that the damages are certain and are proved by the Dubos Affidavit, Whitney Bank respectfully requests that this Court deny the Motion.[19]

## III.    THE AUTOMATIC STAY APPLICABLE TO THE MARCATOS, SAFETY GUIDE AND HIGHWAY SOLUTIONS DOES NOT APPLY TO MILLS BECAUSE MILLS HAS NOT FILED FOR BANKRUPTCY

Mills argues in the Brief that the automatic stay applicable to the bankruptcy filings of the Marcatos, Safety Guide and Highway Solutions should apply to him.  [Brief at p. 10.]  This argument was previously raised by Mills in the Brief in Support of Motion to Dismiss [*Docket*

---

[17] Mills attempts to pass blame for the Check's dishonor to a contractor.  "If McKnight [a contractor] had released the funds due to [Safety Guide], the [C]heck would not have been dishonored by Wachovia [Safety Guide's bank] because a deposit would have been made that would have been sufficient to cover the amount of the [C]heck." [Mills Aff. ¶ 11.]  Even if true, this is not a defense to depositing a check with knowledge that it will be dishonored.

[18] Mills appears to assert in his Brief that because he had previously committed these intentional torts, Whitney Bank is somehow estopped from pursuing its claims against him.  [Brief, p. 8.]  Mills cites no caselaw in support of this assertion.

[19] The fraud count, Count IV, will remain if the Court grants Whitney Bank's Motion for Summary Judgment on Counts II and III.  However, based on the information in Mills' Affidavit under seal, the fraud count may also become ripe.

No. 37] which this Court denied.  [*Docket No. 50.*]  Mills' argument is wrong and should be summarily dismissed again.[20]

Except in rare cases, the automatic stay imposed by 11 U.S.C. § 362(a)(1) applies only to proceedings against the debtor in bankruptcy.  The Fifth Circuit Court of Appeals has explained:

> The automatic stay takes effect under 11 U.S.C. § 362(a)(1) upon the filing of a petition in bankruptcy and acts to stay any judicial "proceeding against the debtor."  Its purposes are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse. . . . By its terms the automatic stay applies only to the debtor, not to co-debtors . . . nor to co-tortfeasors.

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (citing and quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)).

As one frequently cited case articulated, the automatic stay "does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtors."  *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 263 (9th Cir. B.A.P. 1991)[21]; *see also*, *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (noting that bankruptcy "does not stay actions against guarantors"); *Seiko Epson Corp. v. Nu-Kote Int'l*,

---

[20] As previously noted to this Court, before Highway Solutions filed bankruptcy, it attempted to convince Judge DeMent that a stay should be imposed on the claims against it because the owner of Highway Solutions (and guarantor of the applicable debts) – Anne Marcato – had filed bankruptcy.  Judge DeMent refused.  *Whitney Nat'l Bank v. Highway Solutions, LLC et al* (Case No. 2:07-cv-00415-ID-TFM) [*Docket Nos. 24-27.*]

[21] The *Advanced Ribbons* court stated:

> The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. *See, e.g., In re Casgul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982). It does not protect non-debtor parties or their property. *See, e.g., Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121-22 (4th Cir.1988); *Casgul of Nevada*, 22 B.R. at 66. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor. *See, e.g., Ingersoll-Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir.1987) (guarantors); *In re Lockard*, 884 F.2d 1171 (9th Cir.1989) (automatic stay did not prevent an action against a surety on a contractor's bond); *see also 2 Collier on Bankruptcy*, 362.02[1] at 362-28-29 (15th ed. 1990). Similarly, the automatic stay does not protect the property of parties such as officers of the debtor, *see, e.g. Casgul of Nevada*, 22 B.R. at 66, even if the property in question is stock in the debtor corporation. *See In re Calamity Jane's, Inc.*, 22 B.R. 5 (Bankr.D.N.J.1982).

*Id.*

*Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1990) (holding same); *In re The Russell Corp.*, 156 B.R. 347, 350 (Bankr. N.D. Ga. 1993) (refusing to extend the automatic stay to guarantors, noting that "Congress intended the automatic stay of section § 362 to protect the debtor . . . . It was not designed to benefit third parties . . . . Congress did not enact a codebtor stay in Chapters 7 and 11").

The United States District Court for the Southern District of New York has noted that courts in the Second Circuit "regularly[] refuse to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals." *Gucci, Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004). However, the automatic stay may be imposed against a non-bankrupt party "when such an identity of interest exists between the debtor and third party non-debtor that a judgment against the third party will directly affect the debtor." *Id.* (citing *In re North Star Contracting Corp.*, 125 B.R. 368, 370 (S.D.N.Y. 1991) (in turn citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). "Specifically, where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend § 362(a)'s coverage accordingly."[22] *Id.* (citing *In re United Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997) (staying actions against two non-debtor defendants where debtor corporation's successful reorganization was contingent upon the contribution of defendants' personal assets and efforts)).

Extending the automatic stay beyond the bankruptcy debtor, however, is reserved for "special circumstances" and typically applies "to those lawsuits which threaten serious risk to a reorganization in the form of immediate adverse economic consequences for the debtor's estate." *Id.* at 442 (citing *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)). The Fifth

---

[22] For example, *Gucci* explained that where "the threatened harm may adversely affect needed debtor funds ( e.g., when non-debtors are entitled to indemnification) or personnel ( e.g., when debtors need the services of non-debtors facing crushing litigation)", the debtor protection requires the an exception to the usual limited scope of the stay." *Id.* at 441 n.1 (citing *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999)).

Circuit Court of Appeals acknowledged that the automatic stay may be extended to non-debtors where a formal tie or contractual indemnification creates the identity of interests between the debtor and the non-debtor. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). However, *Arnold* refused to extend the automatic stay to a co-defendant of a Chapter 11 debtor in multiple asbestos actions because the court found "no formal tie or contractual indemnification to create such an identity of interests." *Id.* In the Brief, Mills cites a case where the United States Bankruptcy Court for the Middle District of Georgia refused to extend the automatic stay to RICO actions against the debtor's wife and sons. *In re Stewart*, 329 B.R. 910 (Bankr. M.D. Ga. 2005).

There are no "special circumstances" in this Lawsuit threatening to adversely affect Safety Guide's reorganization efforts. There is no formal tie or contractual indemnification creating an identity of interests between Mills and Safety Guide. Rather, taking the allegations in the Amended Complaint as true, as well as the admissions in the Mills Affidavit, Mills is independently liable to Whitney Bank for violations of Alabama law.

## CONCLUSION

The Motion should be denied. In the Brief and in the Affidavit, Mills admits each and every act necessary to prove Whitney Bank's claims asserted against him, leaving no facts for this Court to determine. Whitney Bank's damages are certain, undisputed by Mills, and have been proven by the Dubose Affidavit.

For the foregoing reasons, Whitney Bank requests that this Court enter an Order (i) denying the Motion, and (ii) granting Whitney Bank's Summary Judgment Motion as to Counts II and III.

Respectfully submitted, this 27th day of February, 2008.

/s/ Gregory C. Cook
Gregory C. Cook
BALCH & BINGHAM LLP
1710 6th Avenue North
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  205-226-3426
Facsimile:  205-488-5870
gcook@balch.com

## CERTIFICATE OF SERVICE

I certify that on February 27, 2008, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification to the persons whose addresses are

listed below:

Jack B. Hinton, Jr.
Gidiere, Hinton, Herndon & Christman
904 Regions Tower
60 Commerce Street
Montgomery, Alabama  36104
*Attorney for Defendant Thomas J. Mills*

/s/ Gregory C. Cook
Of Counsel